Frankie GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–91–105–CR.

Court of Appeals of Texas,
Waco.

Sept. 9, 1992.

Opinion on Denial of Rehearing
Sept. 30, 1992.

Discretionary Review Refused
Jan. 27, 1993.

936

Frank Blazek, Smither, Martin, Henderson, Morgan, DeLong & Mathis, Huntsville, for appellant.

David S. Barron, Dist. Atty., Anderson, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

### OPINION

THOMAS, Chief Justice.

A jury convicted Frankie Green of aggravated robbery and set his punishment at ten years in prison. We affirm.

In the evening of November 26, 1990, Percy Westmoreland closed his grocery store in Normangee, took a large amount of cash, checks, and food stamps with him, and drove home. As he was about to enter his home, someone struck him in the head, took the sack containing the cash, checks, and food stamps, and fled the scene. Westmoreland, aged seventy-eight, received serious injuries in the attack.

Sheriff Wilson and Ranger Connell received a tip that Dennis Darnell had seen Frankie Green, a Franklin high school student, with a large amount of cash on No-

vember 28. Wilson and Connell talked to Darnell who confirmed the tip. Steven Edwards also told Connell that he had seen Frankie Green wearing new clothes at school on November 27. Kathy Hawkins told Connell that she overheard Nicholas Edwards tell Frankie Green, "We got him," to which Green replied, "Yeah, and we got some money." Connell also talked to Virgie Green who said that "Red" Green (Frankie's sister) was overheard telling someone that Kenneth Green (Frankie's older brother), Nicholas Edwards, and Rodney Green (Frankie's younger brother) had robbed Westmoreland.

Sheriff Wilson and Ranger Connell presented this information to the grand jury which returned indictments against Kenneth Green, Nicholas Edwards, and Frankie Green on December 12. Connell arrested Frankie Green on December 13 under a capias issued by the district clerk based on the indictment. On December 20 Frankie signed a confession that was later introduced into evidence at his trial.

## INDICTMENT

■ The indictment alleged that, while in the course of committing theft of property and with intent to obtain and maintain control of the property, Frankie Green intentionally and knowingly caused bodily injury to Percy Westmoreland "and said PERCY WESTMORELAND was then and there *older than 64 years of age.*" Green never objected to the form or substance of the indictment before the trial commenced. However, when the prosecutor told the venire during voir dire that the indictment charged aggravated robbery, Green objected to the statement on the ground that the indictment only charged robbery. His objection was that the statute creating the offense of aggravated robbery requires the victim to be "65 years of age or older" before age itself becomes an aggravating factor. *See* TEX.PENAL CODE ANN. § 29.-03(a)(3)(A) (Vernon Supp.1992). The court overruled his objection.

Green's seventh point is that the court erred when it overruled his objection to the State's voir dire and allowed him to be tried

for aggravated robbery when the indictment alleged only robbery. Section 1.06 of the Penal Code provides that a person attains a specified age on his birthday. *Id.* § 1.06 (Vernon 1974). Thus, a person is sixty-four years of age until the day of his sixty-fifth birthday. Alleging in the indictment that Westmoreland was "older than 64 years of age" on the date of the robbery was thus legally equivalent to alleging that he had already attained his sixty-fifth birthday. *See id.; Phillips v. State,* 588 S.W.2d 378, 380 (Tex.Crim.App.1979). He could not be older than sixty-four without being at least sixty-five. Accordingly, the allegation in the indictment charged Green with aggravated robbery based on age of the victim as the aggravating factor. Point seven is overruled.

## BATSON

The first point is based on the overruling of Green's *Batson* objection. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); TEX.CODE CRIM.PROC. ANN. art. 35.261 (Vernon 1989). Green, who is black, objected to the seating of the jury on the ground that the State had used its peremptory challenges to strike three of the four blacks from the jury: Margaret Heggins (number 5), Aaron Buckner (number 14), and McKinney Davis (number 30). Ida Birdine (number 1) served on the jury. After listening to the prosecutor's reasons, the court impliedly found that the strikes were not racially based and overruled the objection. The standard of review is whether the implied findings are clearly erroneous. *See Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.1992).

The State first argues that Green never made a prima facie showing of racial discrimination. This issue became moot after Green made his *Batson* objection, the prosecutor stated his reasons for the strikes, and the court ruled on the objection. *See id.*

The prosecutor said that he struck Margaret Heggins for "two reasons in combination": (1) she had a hard time visualizing a situation in which she could assess the maximum sentence—99 years or life; and

(2) her strong personality. Green argued that a white juror had expressed the same problem with assessing the maximum punishment but was not stricken by the State.

■ Under the prosecutor's questioning, Heggins admitted that she would have difficulty assessing the maximum sentence. Although she could consider the maximum sentence, she said she would find it "tough" to assess. She said that she would act "according to the circumstances." When asked by the defense whether she could assess the maximum sentence if the facts justified it, she answered, "I just don't know what it would be." Finally, however, she told the defense that she could consider and assess the maximum punishment if the facts justified it.

■ Heggins repeatedly expressed reservations about considering and assessing the maximum range of punishment. Striking her for this ambivalence is a facially race-neutral reason. That she was ultimately "rehabilitated" by the defense did not mean the State had to accept her ambivalent views. *See Vargas v. State*, 838 S.W.2d 552, 555 (Tex.Crim.App.1992). The reason behind a peremptory strike does not have to rise to the level of a challenge for cause to be considered legitimately race-neutral. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723.

■ Green pointed out that another juror, Sherry Johnson, expressed a similar concern about assessing the maximum punishment but was not stricken by the State. He insists that the only difference between the two is that Johnson is white and Heggins is black. The State argues, however, that Johnson's ambivalence about assessing the maximum punishment was overcome, in the prosecutor's mind, by her longstanding, friendly acquaintance with Westmoreland and that Johnson was thus not stricken for this reason. A strike does not automatically become racially based just because the prosecution failed to strike another juror who shares the same characteristic as a stricken minority juror. The factors listed in *Keeton v. State*, 749 S.W.2d 861, 867 (Tex.Crim.App.1988), which tend to indicate disparate treatment of minority jurors, do not control the trial court's decision on whether a strike is racially based. *Vargas*, 838 S.W.2d at 554. These factors are to be used by an appellate court as an analytical tool to determine whether the court's findings are clearly erroneous, not to evaluate the prosecutor's credibility. *Young v. State*, 826 S.W.2d 141, 152–53 (Tex.Crim.App.1992) (on rehearing).

■ In any event, the prosecutor gave another independent race-neutral reason for striking Heggins—her strong personality. Because this explanation is not quantifiable and the trial judge personally observed the demeanor of the prospective jurors, we must defer to his decision that this was not a pretext for striking Heggins for a race-based reason. *See Vargas*, 838 S.W.2d at 554. Even if the first reason for the strike—reservations about assessing the maximum penalty—is called into question by the failure to strike a white juror with a similar concern, the second independent reason—strong personality—stands untainted as a basis for the strike. Under the circumstances, the court's finding is not clearly erroneous. *See Hill*, 827 S.W.2d at 865.

■ The State struck Buckner, the prosecutor said, because the "tone of his voice" indicated that he knew the victim and that "it may not have been a pleasant knowledge ... a pleasant relationship." The court noted for the record that Buckner did have an "inflection in his voice" when he answered the question about knowing the victim, but the court declined to further characterize the inflection. This is another facially race-neutral explanation that requires us to defer to the trial judge's implied finding that the reason given was not pretextual. *See Vargas*, 838 S.W.2d at 554. Whether the prosecutor misinterpreted the nuance of the inflection is not for us to judge but lies instead within the peculiar purview of the court who heard it. *See id.*

■ Finally, Green complains that the State struck McKinney Davis for impermissible reasons: he was unresponsive and inattentive during voir dire. These are both race-neutral reasons on their face that

have been upheld as legitimate explanations for peremptory strikes. *See Moore v. State*, 811 S.W.2d 197, 199–200 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). We again defer to the trial court's finding made after he observed the juror's demeanor and response. *See Vargas*, 838 S.W.2d at 554. Moreover, the court and the parties agreed that, even if Davis had not been peremptorily stricken, he would not have served on the jury due to his location on the jury panel and the number of double-strikes. Under the circumstances, Green could not have been harmed by the strike against Davis. *See* Tex.R.App.P. 81(b)(2).

We hold that the court's findings and conclusions are not clearly erroneous. *See Hill*, 827 S.W.2d at 865. Point one is overruled.

## CONFESSION

Points two through six relate to Green's confession. Essentially, he contends in points two, three, and four that the court should have suppressed his confession because he did not knowingly and intelligently waive his right to counsel or his right to remain silent and was never admonished of the dangers and disadvantages of self-representation.

Before turning to the merits of his points, we briefly examine the basic rules for determining the admissibility of a confession. To be admissible, a confession must be voluntarily given and obtained in compliance with *Miranda*. *Ochoa v. State*, 573 S.W.2d 796, 801 (Tex.Crim.App.1978). Whether it is voluntarily given is determined from a totality of the circumstances surrounding its taking. *Barton v. State*, 605 S.W.2d 605, 607 (Tex.Crim.App. [Panel Op.] 1980). At a hearing on the voluntariness of a confession, the court is the fact-finder and the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Humphrey v. State*, 646 S.W.2d 949, 951 (Tex.Crim.App. 1983). The standard of review is abuse of discretion. *Barton*, 605 S.W.2d at 607.

Ranger Bob Connell said he took Green's confession only after reading him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Green had also been given two magistrate's warnings prior to confessing. Connell said that Green acknowledged that he understood his rights and never invoked his right to remain silent or request counsel. Green had not then retained an attorney or been furnished appointed counsel. Connell also denied ever threatening Green or making him any promises to obtain his confession.

Green introduced documentary evidence at the suppression hearing indicating that he is mentally retarded (54 IQ), involved in special education, and functions at the third-grade skill level. Dr. Dickerson, a psychologist, concluded that Green suffers from diminished judgment, insight, and ability to apply knowledge to new situations. The evidence also showed, however, that his "street smarts" exceeded his IQ level. Green asks us to hold as a matter of law that an accused cannot knowingly waive his rights when evidence of mental retardation and limited understanding is unrefuted and the evidence does not show either an affirmative waiver of rights or that his rights were explained prior to taking his confession.

Evidence of mental retardation and mental impairment is a factor to be considered by the court in determining from the totality of the circumstances whether the accused voluntarily and knowingly waived his rights prior to confessing. *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex.Crim.App.1973). The question is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his confession. *Casias v. State*, 452 S.W.2d 483, 488 (Tex.Crim.App.1970). This is usually a question for the fact-finder. *Bell v. State*, 582 S.W.2d 800, 809 (Tex.Crim.App. 1979).

Green's argument that unrefuted evidence of mental retardation precludes a knowing and voluntary waiver of rights has already been rejected. *See id.* at 808–09. One cannot say that the evidence at the suppression hearing conclusively estab-

lished that Green's mental impairment was so great that he could not understand and knowingly waive his rights. Accordingly, the court had to determine from all the circumstances surrounding the taking of the confession whether it was voluntarily given in compliance with *Miranda.*

■■■ Article 1.051(a) provides that a defendant is entitled to counsel in an "adversarial judicial proceeding." TEX.CODE CRIM. PROC.ANN. art. 1.051(a) (Vernon Supp.1992). Moreover, article 1.051(g) provides:

If a defendant wishes to waive his right to counsel, the court shall advise him of the dangers and disadvantages of self-representation. If the court determines that the waiver is voluntarily and knowingly made, the court shall provide the defendant with a statement substantially in the following form, which, if signed by the defendant, shall be filed with and become part of the record of the proceedings: [form of the written statement is given].

*Id.* at art. 1.051(g). Green contends in point three that Connell obtained his confession in violation of this provision and his constitutional right to counsel.

Green's right to counsel under the Sixth Amendment attached upon his indictment. *See* U.S. CONST. amend. VI. Undisputed evidence shows that two magistrates had warned him of his *Miranda* rights before he confessed. This was legally sufficient to advise him of the "dangers and disadvantages" of self-representation during post-indictment questioning. *See Patterson v. Illinois,* 487 U.S. 285, 298, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261 (1988). Thus, the portion of article 1.051(g) that required a court to advise Green of the dangers and disadvantages of self-representation before he could waive his right to counsel was twice complied with. *See* TEX.CODE CRIM. PROC.ANN. art. 1.051(g). He cannot complain about the failure to obtain a written waiver of his right to counsel because he did not object on that ground in the trial court. *See* TEX.R.APP.P. 52(a); *Williams v. State,* 774 S.W.2d 703, 705–06 (Tex.App.— Dallas 1989, pet. ref'd).

Accordingly, the court did not abuse its discretion when it found that Green knowingly waived his right to counsel when he confessed after receiving a *Miranda* warning of his right to counsel. *See Patterson,* 487 U.S. at 298, 108 S.Ct. at 2398. Points two, three, and four are overruled.

In points five and six, Green contends the court should have suppressed the confession because it was obtained as a result of an illegal arrest. He argues that his arrest was illegal because it was made without probable cause and under a capias issued before the court set or denied bail. Green charges that Sheriff Wilson and Ranger Connell, knowing that they did not have probable cause to obtain an arrest warrant prior to indictment, presented the facts they had gathered to the grand jury and obtained an indictment that allowed them to arrest him on a capias issued on the indictment. Consequently, he argues that the capias was "tainted" with the same lack of probable cause, which made his arrest illegal.

■■■ We cannot review the sufficiency of the evidence supporting an indictment or question whether the grand jury had probable cause to indict. *See Polk v. State,* 749 S.W.2d 813, 817 (Tex.Crim.App. 1988). Thus, whether the State had probable cause to obtain an arrest warrant prior to indictment is immaterial, and any lack of probable cause for his arrest before indictment did not automatically make his arrest illegal after indictment.

■■■ Instead, the validity of Green's arrest depends upon the capias issued by the district clerk under article 23.03: "(a) A capias shall be issued by the district clerk upon each indictment for felony presented, after bail has been set or denied by the judge of the court." *See* TEX.CODE CRIM. PROC.ANN. art. 23.03(a) (Vernon 1989). Green first contends that the capias was defective because it was not issued by an impartial magistrate. This contention is rejected because, clearly, the capias was issued by the proper officer—the district clerk—following the indictment.

The district clerk testified that she issued the capias upon the return of the indict-

ment without the judge, to whose court the indictment was returned, ever setting or denying bail. Green contends his arrest was illegal because the district clerk could issue the capias only after the court had set or denied bail. We interpret the phrase, "after bail has been set or denied by the judge of the court," as being a directory requirement only and not a mandatory requirement that, if not strictly followed, would make the capias void or defective. Accordingly, we hold that Green was arrested under a valid capias and that his arrest was thus not illegal. Points five and six are overruled.

Having overruled all points relating to the admissibility of the confession, we hold that the court did not abuse its discretion in admitting it into evidence.

## HEARSAY

Sheriff Wilson of Leon County testified during the trial that Green, who was being held in Madison County, sent word through the Madison County Sheriff's office that Green wanted to talk to him. The court overruled Green's hearsay objection and admitted the testimony not for the truth of the matter stated but for the limited purpose of showing what prompted the action that Sheriff Wilson subsequently took. After the objection was overruled, Wilson said that he sent a deputy to Madison County to transport Green to the Leon County jail, where he and Ranger Connell briefly talked with him and Connell then obtained the confession. Green's eighth point is based on the overruling of his hearsay objection.

■■■ Sheriff Wilson's testimony related hearsay within hearsay: He was told by the Madison County Sheriff's office that Green said he wanted to talk to him. Double hearsay is admissible, however, if each part of the combined statements fit within an exception to the hearsay rule. TEX. R.CRIM.EVID. 805. One of the exceptions in Rule 803 is for a statement of the declarant's present state of mind—usually of his intent or plan—offered to prove that he subsequently acted in accordance with his state of mind. *Id.* at 803(3). This excep-

tion is widely recognized by Texas courts and remains undisturbed by the Texas evidentiary rules. S. Goode, O. Wellborn & M. Sharlot, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 803.7 (Texas Practice 1988) [hereinafter TEXAS PRACTICE]. In fact, Texas precedent allows state-of-mind declarations to be admitted to prove the joint conduct of the declarant and another. *Porter v. State*, 86 Tex.Crim. 23, 215 S.W. 201, 210–11 (1919) (Morrow, J., concurring). Rule 803(3) should, therefore, be interpreted as permitting this practice. TEXAS PRACTICE § 803.7.

■■■ The Rule 803(3) exception is applicable here because the declaration of the Madison County Sheriff's deputy to Sheriff Wilson and Green's declaration both fit within the exception. Each declaration is admissible to prove that Sheriff Wilson, the Madison County Sheriff's office, and Green acted jointly in conformance with the stated intent or plan of future conduct. *See Porter*, 215 S.W. at 210–11.

Assuming, however, that the court erred when it admitted Wilson's testimony over the hearsay objection, the question is whether it would be harmless. *See* TEX. R.APP.P. 81(b)(2). Green argues that the hearsay evidence was devastating to his claim that the confession was not voluntarily given. He contends the jury would have reasonably believed he would not have sent word that he wanted to talk to Sheriff Wilson unless he wanted to voluntarily confess. None of the evidence relating to the voluntariness of the confession even intimated that it was obtained by force, threats, promises, or other inducements. Rather, Green claimed that it was involuntarily given because he did not knowingly and intelligently waive his rights. Under the circumstances, admitting evidence that he asked to talk to Sheriff Wilson before confessing would have no logical relationship to whether he knew and understood his rights before he confessed, and the jury would not have interpreted it otherwise. Isolating the error against the record as a whole, we find that the error would not have contributed to his guilt or punishment beyond a reasonable doubt. *See id.; Har-*

*ris v. State,* 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989). We overrule the eighth point.

## SUFFICIENCY OF THE EVIDENCE

Green questions in point nine whether the evidence is sufficient to support his conviction. He argues that his confession did not show that he even committed a crime. His confession contained these admissions:

- Frankie Green, his brother (Kenneth), and Nicholas Edwards discussed robbing Westmoreland shortly before the crime occurred.
- Frankie and Edwards "decided to do it" on the night of the robbery.
- Frankie, Edwards, and Rodney Green (Frankie's younger brother) drove to Westmoreland's home and waited for him to arrive; Frankie hid by the barn, Edwards hid near the carport, and Rodney remained near the street as a "lookout."
- Westmoreland soon arrived and started walking toward his house carrying a sack, at which time Edwards struck him in the head with a piece of pipe that Edwards had brought with him from Kenneth's house.
- Edwards grabbed the sack from Westmoreland, which contained money, checks, and food stamps, and ran to where Frankie was hiding; Frankie and Edwards then ran from the scene looking for Rodney, who had apparently left.
- Frankie and Edwards left the sack taken from Westmoreland in an "old pickup truck" when they could not find Rodney and then went to the "Flats" where they met Kenneth.
- Edwards told Kenneth about the robbery, and Kenneth used his car to drive Frankie and Edwards to get the sack from the old pickup.
- Kenneth then drove Frankie, Edwards, and Rodney to Frankie's house where they counted and divided the money between the four of them.
- Frankie received $2,000 from the cash taken in the robbery.

Green contends that, other than his confession showing he knew about the robbery in advance and was present at the scene, he never admitted doing any act that made him a party to the offense.

A person is a party to an offense if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974). Presence of the accused at the crime scene, coupled with proof of a prior agreement that the offense should be committed, is evidence that the accused both encouraged and intended to promote the commission of the offense. *Mayfield v. State,* 716 S.W.2d 509, 514 (Tex.Crim.App.1986). Green admitted discussing the robbery with Edwards, agreeing with Edwards "to do it," hiding at the scene while Edwards robbed Westmoreland, fleeing the scene with Edwards, hiding the money in the old pickup, and receiving a large share of the loot. Thus, the admissions in his confession that he agreed to the robbery and was present at its commission were, standing alone, sufficient to establish his criminal responsibility as a party. *See id.*

Viewing the admissions and corroborating evidence in the light most favorable to the verdict, we hold that any rational factfinder could, beyond a reasonable doubt, find all of the elements of the offense and Green's guilt as a party. *Rivera v. State,* 808 S.W.2d 80, 91 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991); Tex.Penal Code Ann. § 7.02(a)(2). Point nine is overruled.

## CHARGE

The charge on guilt-innocence contained this application paragraph:

Now, if you find from the evidence beyond a reasonable doubt that ... Nicholas Edwards did intentionally or knowingly, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, cause bodily injury to Percy Westmoreland and said Percy Westmoreland

was then and there older than sixty-four years of age, and that ... Frankie Green, acted with intent to promote or assist the commission of the offense by Nicholas Edwards by encouraging, aiding, or attempting to aid Nicholas Edwards to commit the aforesaid offense, by entering into an agreement with Nicholas Edwards to rob Percy Westmoreland and being present when Nicholas Edwards robbed Percy Westmoreland, or by fleeing the scene of the robbery and assisting Nicholas Edwards in fleeing the scene of the robbery and the defendant, Frankie Green, knew that Nicholas Edwards had robbed Percy Westmoreland, or entered into an agreement with Nicholas Edwards to rob Percy Westmoreland and assisted Nicholas Edwards in hiding the proceeds of the robbery[,] then you will find the defendant, Frankie Green, guilty of aggravated robbery as charged in the indictment.

Green's tenth and eleventh points question whether the evidence is sufficient to authorize his conviction as a party on the three alternate theories outlined in the charge: (1) agreeing to the robbery and then being present at the scene; (2) agreeing to rob Westmoreland and assisting Edwards in fleeing the scene, knowing that the robbery had occurred; or (3) agreeing to rob Westmoreland and, knowing that the crime had occurred, assisting Edwards in hiding the proceeds of the robbery. Green admitted that he and Edwards agreed to the robbery—i.e., "to do it"—and that he was present at the scene. As already noted, this was sufficient evidence from which the jury could reasonably infer that he acted as a party. *See Mayfield*, 716 S.W.2d at 514.

 Moreover, circumstantial evidence will support a charge on parties, and the jury can reasonably infer the accused's guilt as a party from such evidence. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). In considering whether the accused acted as a party, the court and jury may consider events occurring before, during, or after the offense. *Id.*

Green admitted that he:
• discussed the robbery with Edwards before it occurred.
• agreed with Edwards "to do it" on the night of the robbery.
• accompanied Edwards to the scene and hid while they waited for Westmoreland to arrive.
• accompanied Edwards from the scene after Edwards hit Westmoreland in the head and took his money.
• accompanied Edwards while they hid the money in an old pickup truck.
• went with Edwards and Kenneth Green to retrieve the money from the old pickup.
• participated with Edwards, Kenneth, and Rodney Green in counting and dividing the money.
• received $2,000 from the proceeds of the robbery.

There was no direct evidence that Green assisted Edwards in fleeing the scene or hiding the loot. The jury could reasonably infer from the circumstantial evidence, however, that Green and Edwards acted under a common design and plan that included assisting each other in fleeing the scene and hiding the loot in the old pickup. *See Beardsley*, 738 S.W.2d at 684. All three alternate theories were therefore supported by the evidence. Points ten and eleven are overruled.

## IMPEACHMENT

Nicholas Edwards, who was called as a witness by the State, denied on direct examination that Green knew Westmoreland was going to be robbed when they went to his home. The prosecutor then asked him, "Do you remember telling me something different yesterday?" After the court overruled defense objections that the prosecutor was engaging in improper impeachment and placing the prosecutor's own credibility in issue, Edwards answered "No." The court then refused to allow the State to prove up the allegedly prior inconsistent statement. In point twelve, Green argues that the court erred when it allowed

the prosecutor to inject his own personal knowledge and opinion into the trial. He contends that the jury was placed in the position of having to decide who was telling the truth—the prosecutor or Edwards.

The credibility of any witness may be attacked, even by the party who called him. TEX.R.CRIM.EVID. 607. A witness' prior inconsistent statement is admissible for impeachment. *Id.* at 612(a). Thus, the court did not err when it allowed the prosecutor to ask Edwards whether he had made a prior inconsistent statement. *See id.* Assuming, however, that error occurred, Green could hardly have been harmed by Edward's denial of any prior inconsistent statement, especially when the State was never allowed to prove its alleged contents and in light of Green's own admission that he and Edwards agreed to the robbery before they went to Westmoreland's house. Any error would have been harmless beyond a reasonable doubt. *See* TEX.R.APP.P. 81(b)(2). Point twelve is overruled.

### PUNISHMENT

Green has several points relating to the punishment stage. His first complaint is that the court erred when it refused to instruct the jury, as he requested, that it could not assess his punishment by considering the law of parties. He relies on *Green v. State*, 682 S.W.2d 271, 287 n. 4 (Tex.Crim.App.1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985), in which the court held that, although the jury is entitled to consider on punishment all of the evidence adduced at the guilt phase, the court must nevertheless instruct the jury—if requested—that it cannot consider the law of parties in assessing the death penalty. This is because the issues the jury must answer in assessing punishment in a capital case focus solely on the defendant's individual conduct, not that of a co-actor. *Id.* at 287; TEX.CODE CRIM.PROC. ANN. art. 37.071(b), (e) (Vernon Supp.1992). Thus, the instruction is necessary in a capital case to expressly restrict the jury's view of the evidence to the defendant's own conduct.

Green argues that he is entitled to the same instruction in a non-capital case. Nothing in article 37.07, relating to the punishment hearing in non-capital cases, restricts the jury's consideration to the defendant's own conduct in assessing punishment. TEX.CODE CRIM.PROC.ANN. art. 37.07 (Vernon 1981 & Supp.1992). In fact, the jury has always been allowed to consider all of the facts and circumstances surrounding a non-capital offense in assessing punishment. *Williams v. State*, 535 S.W.2d 637, 639 (Tex.Crim.App.1976). Green's requested instruction, if given, would abrogate the general rule in a non-capital case without any statutory imperative for doing so. We hold that he was not entitled to the instruction. Point thirteen is overruled.

At the beginning of the punishment phase, the State re-offered all of the evidence from the guilt stage. Green objected to the State re-offering Nicholas Edward's testimony, including the out-of-court statement used for impeachment, on the ground that the prosecutor then believed that Edwards had testified falsely. (The prosecutor admitted at the hearing on the motion for a new trial that he believed Edwards had lied). The court, however, overruled the objection to Edward's testimony being re-offered on punishment and later denied the motion for a new trial containing the same complaint.

Green's fourteenth and fifteenth points are based on the contention that the court improperly allowed the State to re-offer Edward's perjured testimony on punishment. Green confuses the duty of a prosecutor not to knowingly offer perjured testimony and the admissibility of testimony that, in hindsight, the prosecutor may not believe was entirely truthful. The record does not reflect or even hint that the State knowingly offered perjured testimony.

Evidence presented during the guilt stage is automatically before the jury on punishment regardless of whether it is formally re-offered by the State. *Wright v. State*, 468 S.W.2d 422, 425 (Tex.Crim. App.1971). Thus, the prosecutor's re-offer-

ing of evidence from the guilt phase had no legal effect. Whether Edwards had testified truthfully or not was for the jury to determine, not for the prosecutor, and the prosecutor's personal hindsight opinion of Edwards' credibility did not make his testimony inadmissible on punishment. Points fourteen and fifteen are overruled.

■■■ The court included this instruction in the charge on punishment without any objection from Green:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed *through the award of good conduct time.* Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

(Emphasis added). Article 37.07, section 4(a), requires the court to give this instruction in a felony jury trial "if the offense of which the jury has found the defendant guilty is listed in Section 3g(a)(1), Article 42.12." TEX.CODE CRIM.PROC.ANN. arts. 37.-07, § 4(a), 42.12, § 3g(a)(1) (Vernon Supp. 1992). Aggravated robbery, the offense of which Green was convicted, is listed in section 3g(a)(1)(D). *See id.* § 3g(a)(1)(D).

Green now contends the court erred when it gave the instruction because it conflicts with section 8(c)(11) of article 42.-18, which prohibits a person serving a sentence for aggravated robbery from being released to mandatory supervision. *See id.* at art. 42.18, § 8(c)(11). Nor can good-conduct time be considered in determining when a prisoner sentenced for aggravated robbery is eligible for parole. *Id.* § 8(b)(3).

Apparently, Green's concern is that the instruction misled the jury into believing that any good-conduct time he might earn would be credited to his sentence when, having been convicted of aggravated robbery, good conduct could not be considered in determining either his parole date or his eligibility for mandatory supervision. This

would have caused the jury, he apparently argues, to increase his sentence to compensate for the good-conduct credit.

Assuming that giving the instruction constituted an error in the charge, we must determine whether it resulted in such egregious harm that Green did not receive a fair and impartial trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (on rehearing). This test is used when the error in the charge is not objected to at trial. *Id.* The degree of harm is determined by considering the entire charge, the weight of the probative evidence, the contested issues, arguments of the parties, and any other relevant information revealed by the record. *Id.*

Informing the jury of good-conduct time is now expressly permitted by the constitution. TEX. CONST. art. IV, § 11(a). The instruction given by the court deals in possibilities, not probabilities or absolutes. It merely informed the jury that prison authorities *may* give Green good-conduct time if he earns it, but that he *may* lose it if he misbehaves. How one can be egregiously harmed by such an instruction is not readily apparent. If the instruction could have caused the jury to impose a heavier sentence than it would have otherwise to offset any good-time credit, as Green argues, then that prospect is inherent in the instruction itself, regardless of whether it is properly or improperly given.

Considering the record as a whole, the charge, the probative evidence, and the rather moderate sentence assessed by the jury, we hold that giving the instruction in this instance, when good-conduct time earned may have been of no benefit to Green, did not prevent him from receiving a fair and impartial trial. *See Almanza,* 686 S.W.2d at 171. Points sixteen and seventeen are overruled.

We affirm the judgment.

## OPINION ON REHEARING

Green points out in his motion for rehearing that we mischaracterized his eleventh point as an attack on the evidence. His eleventh point is that the charge improper-

ly authorized his conviction on theories not constituting an offense. Accordingly, we will reexamine and dispose of the contention as a point of law.

■ The charge on guilt-innocence contained this application paragraph:

Now, if you find from the evidence beyond a reasonable doubt that ... Nicholas Edwards did intentionally or knowingly, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, cause bodily injury to Percy Westmoreland and said Percy Westmoreland was then and there older than sixty-four years of age, and that ... Frankie Green, acted with intent to promote or assist the commission of the offense by Nicholas Edwards by encouraging, aiding, or attempting to aid Nicholas Edwards to commit the aforesaid offense, by entering into an agreement with Nicholas Edwards to rob Percy Westmoreland and being present when Nicholas Edwards robbed Percy Westmoreland, or by fleeing the scene of the robbery and assisting Nicholas Edwards in fleeing the scene of the robbery and the defendant, Frankie Green, knew that Nicholas Edwards had robbed Percy Westmoreland, or entered into an agreement with Nicholas Edwards to rob Percy Westmoreland and assisted Nicholas Edwards in hiding the proceeds of the robbery[,] then you will find the defendant, Frankie Green, guilty of aggravated robbery as charged in the indictment.

The charge authorized a conviction under the law of parties on three alternate theories, all of which were disjunctively premised on a finding that Green agreed with Edwards to commit the robbery. Thus, if the jury found beyond a reasonable doubt that he agreed to the robbery, then it could convict him if it also found beyond a reasonable doubt that he (1) was present at the scene, (2) assisted Edwards in fleeing the scene, or (3) assisted Edwards in hiding the proceeds of the robbery. Green questions whether either of the last two acts, even if supported by the evidence, would make him criminally liable as a party.

As noted in the opinion, the jury can consider events occurring before, during, or after the offense in determining whether a person is guilty as a party. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App. 1987). Moreover, the court can look to acts before, during, or after an offense which show a common design to commit the offense. *Alexander v. State*, 607 S.W.2d 551, 553 (Tex.Crim.App. [Panel Op.] 1980). Consequently, the court could authorize Green's conviction based on an agreement to commit the offense and a subsequent act or acts that aided or attempted to facilitate the commission of the offense. *See id.* Accordingly, the charge properly authorized the jury to base Green's conviction as a party on acts occurring after the robbery.

Point eleven is again overruled. Otherwise, the motion for a rehearing is denied.