Michelle Ann Thompson v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-372-CR

     MICHELLE ANN THOMPSON,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2000-882-C
                                                                                                                
                                                                                                         
MEMORANDUM OPINION
                                                                                                                

      A jury found Michelle Ann Thompson guilty of aggravated sexual assault and assessed her
punishment at fifty years in prison and a ten thousand dollar fine. Michelle complains in her
appeal that the evidence is legally and factually insufficient to establish her intent to promote or
assist her husband’s aggravated sexual assault of J.W., Michelle’s ten year old daughter. We will
affirm.
LAW OF PARTIES
       Although the aggravated sexual assault of which Michelle was found guilty arose from Todd
Thompson’s oral sex with J.W., Michelle may be found guilty under the law of parties. Tex.
Pen. Code Ann. § 7.02 (Vernon 1994). Under the law of parties:
A person is criminally responsible for an offense committed by the conduct of another
if:
(2) acting with the intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to commit
the offense; or
(3) having a legal duty to prevent commission of the offense and acting with
intent to promote or assist its commission, he fails to make a reasonable effort
to prevent commission of the offense.

      Id. at § 7.02(a) (2), (3).
      Physical presence alone at the scene of the crime is not enough to make one a party. See
Miles v. State, 918 S.W.2d 511, 515 (Tex. Crim. App. 1996). But, “[e]vidence is sufficient to
convict under the law of parties where the defendant is physically present at the commission of the
offense and encourages its commission by words or other agreement.” Ransom v. State, 920
S.W.2d 288, 302 (Tex. Crim. App. 1996); Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985), cert. denied, 476 U.S. 1101, 90 L. Ed. 2d 352, 106 S. Ct. 1942 (1986); Green v.
State, 839 S.W.2d 935, 943 (Tex. App.—Waco 1993, pet. denied).
      To determine whether the defendant is a party to the crime, the court may look to events
occurring before, during, and after the commission of the offense. Ransom, 920 S.W.2d at 302. 
The court may also rely on actions of the defendant which show an understanding and common
design to do the prohibited act. Id. And circumstantial evidence may be sufficient to prove the
defendant’s status as a party. Id.LEGAL SUFFICIENCYA "legal sufficiency of the evidence review does not involve any weighing of favorable and
non-favorable evidence." Margraves v. State, 34 S.W.3d 912, 917 (Tex. Crim. App. 2000)
(citing Cardenas v. State, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000)). Instead, a legal-sufficiency review calls upon the reviewing court to view the relevant evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Id.; see also Jackson v. Virginia, 443
U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) (emphasis in original); Mason v. State, 905
S.W.2d 570, 574 (Tex. Crim. App. 1995).
      At a separate trial, Todd Thompson, Michelle’s husband, was found guilty of the aggravated
sexual assault of J.W. During Michelle’s trial, J.W. testified that Todd sexually assaulted her
multiple times; including times when her mother would watch or participate. One such assault
occurred when they lived in Bruceville and J.W. came for a visit. J.W. was in bed between Todd
and her mom when Todd rubbed J.W.’s private parts under her clothes. J.W. saw her mom
watching them.
      Another assault occurred when they lived on Scott Circle. J.W. testified that Todd came and
got J.W. out of her bed and took her to bed with him and her mom. At first, while J.W. was
laying in bed beside them, Todd was on top of her mom moving up and down. Then, when her
mom was on top of Todd, he told J.W. to take off her clothes and sit on his head. J.W. only took
off her panties and straddled Todd’s head while on her knees. Todd’s head was between her legs. 
Todd licked her private parts where she goes number one for a couple of minutes. J.W.’s mom
would sometimes move up and down and sometimes she would stop and look at J.W. After it
stopped, J.W. laid down on the bed with Todd and her mom. 
      Michelle testified that she and Todd had sex when J.W. was in bed with them approximately
twice. She would tell Todd no, but he would keep on and on at her, and she would just finally
give in.
      Michelle also testified regarding the assault J.W. described as happening when they lived on
Scott Circle. Michelle stated that she and Todd were in bed. J.W. knocked on the door. Michelle
told Todd not to let J.W. in and they argued about it. Michelle then told Todd he could let J.W.
in. J.W. got in bed with her mom and Todd and they all went to sleep. Todd woke Michelle
wanting to have sex with her. Michelle had her back to Todd and J.W. was in front of Michelle. 
Todd and Michelle were having sex when Todd reached over and touched J.W. Michelle testified
she does not know where Todd touched J.W., just that he touched her while they were having sex.
      Michelle testified to her knowledge of multiple sexual assaults of J.W. by Todd and to her
attempts to increase the amount of visitation J.W. had with Todd and Michelle despite her
knowledge of the abuse. In her third statement to police, Michelle wrote: “I know it is my fault
that I didn’t protect her from him doing the things he was doing to her.”
      Officer Abdon Rodriquez testified that Michelle became a suspect in the aggravated sexual
assault of her daughter because of information he received from Marvin Walizer, J.W.’s biological
father. Walizer reported to Officer Rodriquez that Michelle told some friends she gave Todd a
father’s day present, which consisted of Michelle and J.W. having sex with Todd at the same time. 
      Additional witnesses also testified to facts concerning Michelle’s involvement with the
aggravated sexual assault of her daughter. Lezlie Paris, Todd’s sister, testified to statements that
both Michelle and Todd made to her regarding assaults of J.W. B.W., Michelle’s son, testified
regarding the time he saw Todd and J.W. enter and leave the shower together and to a time he and
Michelle found Todd and J.W. asleep together on the couch. Todd was laying on the couch with
just his boxer shorts on and J.W. was naked and laying on top of Todd. 
      Veronica Terrell, a Child Protective Services Investigator, testified to statements Michelle
made to Terrell concerning the aggravated sexual assault of J.W. Terrell testified Michelle told
her Michelle and Todd were having sex, J.W. knocked on the door, Todd got up and let J.W. in
the bedroom, and Todd made J.W. take her clothes off during the course of the events.
      In this case, the essential element of the crime of which Michelle complains is her intent to
promote or assist in the aggravated sexual assault of her daughter. After a careful review of the
record viewed in the light most favorable to the verdict, we find the evidence is sufficient for a
rational jury to find beyond a reasonable doubt that Michelle intended to assist or promote the
commission of the aggravated assault on J.W. We overrule Michelle’s first issue.
FACTUAL SUFFICIENCY
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the “in the light
most favorable to the prosecution” construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask “whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may “believe all, some, or none of the testimony.” Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      The first type of factual sufficiency review requires us to review the evidence that supports
the inference Michelle intended to assist or promote the aggravated sexual assault of her daughter. 
Based on the facts in the record, some of which are recounted above, we find the evidence
presented concerning Michelle’s intent to assist or promote the commission of the aggravated
assault on J.W. is not so obviously weak as to undermine confidence in the jury’s determination.
      The second type of factual sufficiency review requires us to compare the evidence which
proves Michelle’s guilt against that which is contrary to her guilt. In addition to her own
testimony recounted above, Michelle presented two witnesses in her defense.
      Nicole Conner, Michelle’s best friend for fifteen years, testified on her behalf. Conner
testified that Wendy Young was angry one night when they were all at a nightclub. Young
confronted Michelle, and Michelle acted surprised and scared. Conner did not know why Wendy
was mad. Young is the person who purportedly told Walizer about Michelle’s “father’s day
present” to Todd. The implication of this testimony is that Young made up the story regarding
the father’s day present because she was angry with Michelle.
      Tonya Barfield, Michelle’s younger sister, testified she does not have a good relationship with
Todd, but from her observations J.W. and Michelle were happy.
      Based on Michelle’s agreement to allow J.W. into their bed; the amount of Michelle’s
participation in the aggravated sexual assault as testified to by J.W. or Michelle; her knowledge
of previous assaults of J.W. by Todd; her pursuit of additional visitation which increased J.W.’s
exposure to Todd; and her complete lack of any effort to prevent the aggravated sexual assault of
her daughter, we find the proof of Michelle’s guilt is not greatly outweighed by contrary proof. 
We overrule Michelle’s second issue.
CONCLUSION
      Having found legally and factually sufficient evidence to establish Michelle was a party to the
aggravated sexual assault of J.W. by Todd, we overrule both issues.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed December 11, 2002
Do not publish
[CRPM]


          This comment was made during the prosecutor's opening statement: "Evidence will further
show, ladies and gentlemen, that [Appellant] had on gloves, and down there where they found him
crouched there was a screwdriver. The evidence will show that at this time [Appellant] did not
say anything as to why he was in the building." (Emphasis added). That last remark, clearly
commenting on Appellant's post-arrest silence, was made without objection. 
          Likewise, Officer Barrington was questioned without objection about Appellant's post-arrest silence: 
          Q       Did you go inside of the restroom?
          A       Like I say, I can't remember if I went in there and grabbed him and brought him
out, or if he came out by himself and we brought him against the wall to search
him.
* * * 
          Q       Did he say anything to you at that time?
          A       No, sir.
(Emphasis added). The admission without objection of these explicit comments on Appellant's
post-arrest silence cured any error arising from the comments that are the subject of the first point. 
See id. Point one is overruled. All points having been overruled, the judgment is affirmed.
 
                                                                                                                                                                                                               BOB L. THOMAS
PUBLISH                                                            Chief Justice

[Participating: Chief Justice Thomas and Chief Justice McDonald (Retired)]