

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00114-CR

_____

JAMES ROBERT HENDRIX, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 34299-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

James Robert Hendrix appeals from his conviction by a jury for the offense of aggravated sexual assault. The jury assessed his punishment at five years' imprisonment in this case and five years' imprisonment in a separate conviction which is also before this Court on appeal.[1] Hendrix contends we should reverse his conviction because the trial court erred by failing to suppress his written statement and because the evidence was legally and factually insufficient to support the verdict.

## I.    Statement of Facts

The evidence shows that investigator Mike Claxton initially contacted Hendrix about allegations that he might be involved in a sexual assault of a child. Hendrix agreed to meet officers near his work, at the side of the road, and talk to them. After that meeting, officers arranged for Hendrix to take a polygraph examination. When he arrived at the sheriff's office, Claxton told Hendrix that the polygraph examination was scheduled for a later date due to the administrator's schedule and asked Hendrix to talk with him about the case; Hendrix did so. Claxton told Hendrix he was not under arrest and could leave at any time.

The testimony shows that the meeting took place in an 8 x 10 foot room with one door and no windows, and took less than an hour and a half. The evidence shows that Claxton and the other

---

[1]In trial court cause number 34,301B, our cause number 06-07-00115-CR, Hendrix was convicted of aggravated sexual assault.

officer were physically larger than Hendrix. Claxton transcribed the interview and gave it to Hendrix to read and sign. Hendrix signed and initialed each paragraph, and then left.

## II.    Discussion

### A.    Voluntariness of Statement

A statement is involuntary if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

The totality of the circumstances must be considered in our review of this issue. *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996); *Lewis v. State*, 15 S.W.3d 250, 256 (Tex. App.—Texarkana 2000, no pet.). Whether the confession is true or false is irrelevant to a voluntariness determination because it is the methods used to extract an involuntary confession that offend constitutional principles. *See Lego v. Twomey*, 404 U.S. 477, 484–85 n.12–13 (1972); *Terrazas*, 4 S.W.3d at 723–24.

If raised by the defendant, the State bears the burden of proving by a preponderance of the evidence that the statement was given voluntarily. *Alvarado*, 912 S.W.2d at 211. The trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding on voluntariness may not be disturbed on appeal absent an abuse of discretion. *Id.*; *Butler v. State*, 872

3

S.W.2d 227 (Tex. Crim. App. 1994); *May v. State*, 139 S.W.3d 93, 100 (Tex. App.—Texarkana 2004, pet. ref'd).

The determination of whether a confession is voluntary under the Due Process Clause of the Fourteenth Amendment must be based on the examination of the totality of the circumstances under which the statement was obtained. *Davis v. North Carolina*, 384 U.S. 737 (1966). Relevant circumstances to determine if a defendant's will has been overborne have included length of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality. *Armstrong v. State*, 718 S.W.2d 686 (Tex. 1986).

The United States Supreme Court has held that coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the Due Process Clause. *Colorado v. Connelly*, 479 U.S. 157 (1986). While each case considered by the Supreme Court since its seminal confession case[2] has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct.[3]

---

[2]*Brown v. Mississippi*, 297 U.S. 278 (1936) (police officers extracted confessions from accused through brutal torture).

[3]*Mincey v. Arizona*, 437 U.S. 385 (1978) (defendant subjected to four-hour interrogation while incapacitated and sedated in intensive care unit); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant, on medication, interrogated for over eighteen hours without food or sleep); *Beecher v. Alabama*, 389 U.S. 35 (1967) (police officers held gun to head of wounded confessant to extract confession); *Davis*, 384 U.S. 737 (sixteen days of incommunicado interrogation in closed cell without windows, limited food, and coercive tactics); *Culombe v. Connecticut*, 367 U.S. 568 (1961) (defendant held for five days of repeated questioning during which police employed coercive

4

Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. *Id.* at 164.

In the present case, Hendrix's meeting with Claxton was not custodial, as Claxton informed Hendrix that he was free to leave at any time. The meeting lasted one and a half hours, so any claim of prolonged interrogation is without merit. There is no testimony that Hendrix ever asked for or was denied communication with a lawyer or his family, or that he asked to terminate the interview. Also, while both of the police officers were physically larger than Hendrix, there is no evidence that physical brutality occurred during the meeting.

In consideration of the United States Supreme Court's ruling that deprivation of a criminal defendant's due process rights does not occur without coercive conduct that is causally related to the confession, we conclude that, because Hendrix has provided no evidence to make such a connection, the sheriff's department did not deprive him of his due process rights.

Accordingly, under the totality of the circumstances, and viewed in the light most favorable to the trial court's ruling, we find that the trial court did not abuse its discretion by finding that Hendrix's statement was voluntary. *See Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App.

---

tactics); *Reck v. Pate*, 367 U.S. 433 (1961) (defendant held for four days with inadequate food and medical attention until confession obtained); *Payne v. Arkansas*, 356 U.S. 560 (1958) (defendant held incommunicado for three days with little food; confession obtained when officers informed defendant that chief of police was preparing to admit lynch mob into jail); *Ashcraft v. Tennessee*, 322 U.S. 143 (1944) (defendant questioned by relays of officers for thirty-six hours without an opportunity for sleep).

5

2006); *see also Pace v. State*, 986 S.W.2d 740, 747 (Tex. App.—El Paso 1999, pet. ref'd); *Green v. State*, 839 S.W.2d 935, 940 (Tex. App.—Waco 1992, pet. ref'd).

### B.    Sufficiency of the Evidence

Hendrix also contends the evidence is legally and factually insufficient to support the verdict. In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Hendrix was accused of intentionally or knowingly penetrating the anus or sex organ of a child under fourteen years of age by any means. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2007). In the statement discussed above, the complainant is a female, aged thirteen at the time of the alleged offense. Hendrix admitted placing his finger in her vagina on two different occasions. The complainant testified, and described two additional encounters in which Hendrix placed an unknown part of his body in her vagina. She also testified at one point that he had a knife, and told

6

her during the first encounter that he would cut her if she screamed or told anyone—and that he would give her half of his tax refund check.

An aunt of the girl did not testify as to any acts, but did testify that she had believed before being told that there was an ongoing sexual relationship between the two.

However, there is also considerable inconsistency in the various statements made by the complainant at different times. The girl had initially told an examining nurse that Hendrix penetrated her with his sex organ, but at trial, she stated that she did not know what had penetrated her and that she had told her mother that he made her turn away from him during the encounters, although at trial she testified otherwise. She also had told a law enforcement officer that she was required to lie down both times, which is also inconsistent with her testimony at trial.

There was also evidence that she was angry at Hendrix and at her mother for punishing her—because she had written six trash cans full of notes—and admitted that at least one of the letters for which she had gotten into trouble was a fantasy. There was also testimony that some of the notes were sexual in nature and about her wanting to have sex with her boyfriend. The complainant also testified that she was not happy about being grounded and having her CD player privileges taken away.

In this case, there is evidence that, if believed by the jury, would support a conclusion that Hendrix either placed a finger or his sexual organ inside the sex organ of the complainant. Thus, the evidence is legally sufficient. Further, although the evidence clearly sets out alternative reasons for

7

her accusations, the State's evidence is not so weak, or Hendrix's evidence so compelling, as to allow us to second-guess the determination of the jury in this instance. The evidence is thus also factually sufficient to support the verdict. The contentions of error are overruled.

## C.    Sentencing

On review of the final judgment in this case, we note that it states that it is to run concurrently, although there is no indication of anything that it might run concurrently with. The companion conviction, in our cause number 06-07-00115-CR, states that it is to run consecutively with and beginning at the completion of this sentence—which is an accurate representation of the sentencing pronounced on Hendrix in open court. The trial court considered arguments from counsel regarding whether the two convictions should run concurrently or consecutively. The trial court then explicitly stated that cause number 34,301B (the companion case in this Court) was to begin after completion of the five-year sentence in this case. Appellate courts have the authority to reform the judgment to make the record speak the truth when the matter has been called to its attention by any source. *French v. State*, 830 S.W.2d 607 (Tex. Crim. App. 1992). In *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd), the court noted that the authority of the appellate court to reform incorrect judgments is not dependent on request of any party and that the appellate court may act sua sponte.[4]

---

[4]The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the judgment of the trial court. TEX. R. APP. P. 43.2(b).

Where there is a variation between the oral pronouncement of sentence and the written memorialization of the sentence, the oral pronouncement of sentence controls. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). We reform the judgment to delete the portion stating that "THIS SENTENCE SHALL RUN CONCURRENTLY."

As modified, we affirm.


Jack Carter
Justice

Date Submitted:     June 12, 2008
Date Decided:       July 11, 2008

Do Not Publish

9