

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00115-CR

**DANYELL DANIELS,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

From the 13th District Court
Navarro County, Texas
Trial Court No. 31088

## MEMORANDUM OPINION

After a jury convicted Danyell Daniels of aggravated assault of a public servant, it assessed punishment at life in prison. In two issues, Daniels challenges the trial court's exemption of a veniremember from jury service and the admission of his recorded interview. We will affirm.

### Background

The evidence at trial showed that on November 11, 2005, Trooper Matt McGinnis conducted a traffic stop of the vehicle that Daniels was riding in as a passenger.

Immediately after the vehicle came to a stop, Daniels got out of the vehicle and shot McGinnis in the hand. McGinnis returned fire as Daniels fled on foot. Several days later, Daniels was arrested in Texas City for bicycle theft and the police interviewed him regarding the shooting of McGinnis. After giving a videotaped interview in which he confessed to shooting McGinnis, Daniels was indicted and convicted for aggravated assault of a public servant.

**Juror Panel**

Daniels's first issue argues that the trial court improperly excused veniremember Thomas. During voir dire, the trial judge advised the prospective jurors of the exemptions from jury service available under Government Code section 62.106(a). *See* TEX. GOV'T CODE ANN. § 62.106(a) (Vernon 2005). Section 62.106(a)(2) expressly provides that a person qualified to serve as a petit juror may establish an exemption from jury service if the person has legal custody of a child younger than 10 years of age and the person's service on the jury requires leaving the child without adequate supervision. TEX. GOV'T CODE ANN. § 62.106(a)(2).

Shortly after, the trial court acknowledged Thomas who stated, "I have children also." The trial judge then asked "Okay, and if you served on the jury that would cause them to be left unattended?" Thomas responded, "Yeah, I have to pick them up." Daniels then asked in a bench conference "does he not have a wife...can you check on that?" The trial judge responded, "I think when he's answered, I have to assume that he's answered truthfully and he meets the test." The trial judge then allowed Thomas

to leave. On appeal, Daniels complains that the trial court should have inquired whether someone else could have attended to Thomas's child.

Article 35.03 gives a trial judge wide authority to excuse prospective jurors on any proper basis, and the judge can act on his own initiative. *See* TEX. CODE CRIM. PROC. ANN. art 35.03 (Vernon Supp. 2008); *Teague v. State*, 864 S.W.2d 505 (Tex. Crim. App. 1993). Because Section 62.106(a)(2) expressly exempts a person whose service on a jury would leave their child younger than 10 years of age without adequate supervision, it was not error for the trial judge to excuse Thomas. TEX. GOV'T CODE ANN. § 62.106(a)(2). Upon hearing Thomas's statements that he had children and that he needed to pick them up, it was in the trial court's discretion to determine that Thomas was entitled to an exemption under section 62.106(a)(2). The trial judge was not obligated to further question Thomas. We overrule Daniels's first issue.

## Voluntariness

Daniels contends in his second issue that the court erred by denying his motion to suppress in which he challenged the voluntariness of the recorded interview he gave to police. He argues that his recorded interview should have been suppressed because his mental incapacity rendered it involuntary.

We review a suppression ruling under an abuse-of-discretion standard. *Montanez v. State*, 195 S.W.3d 101, 108 (Tex. Crim. App. 2006). We afford almost total deference to the court's determination of historical facts but review de novo the court's ruling on mixed questions of law and fact, which do not turn on the credibility and demeanor of witnesses. *Id*. at 106. The voluntariness of a statement given to law

enforcement is determined from the totality of the circumstances. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000); *Kearney v. State*, 181 S.W.3d 438, 444 (Tex. App.—Waco 2005, pet. ref'd). A trial court may elect to believe or disbelieve any or all of the evidence presented. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

Evidence of diminished mental capacity is merely one factor to be considered under the "totality of the circumstances" standard for determining whether a confession is admissible. *Bizarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973). The question is whether Daniels's mental impairment was so severe that he was incapable of understanding the meaning and effect of his confession. *Green v. State*, 839 S.W.2d 935, 940 (Tex. App.—Waco 1992, pet. ref'd).

Here, the trial court conducted a hearing to determine whether Daniels's statement was given voluntarily. During that hearing, Daniels called Dr. Paul Andrews, who had previously evaluated Daniels to determine his competency to stand trial. Andrews testified that the testing he conducted revealed that Daniels's IQ was "well below average." During cross-examination, Andrews testified that "there were indications on some of the tests that [Daniels] was not well motivated to perform well." According to Andrews, the tests he conducted were a good indicator of whether a person is cooperating. He stated:

> If they're not cooperating, it's kind of like trying to read a cat scan when someone has been moving around… it's fuzzy. Here is what I think based on the fuzzy picture…[Daniels] does seem to have some limitations in his ability to solve problems and make decisions. He does seem to have some limitations in his vocabulary. He does seem to have some limitations in judgment. How much? To what degree? That's the fuzziness.

Andrews further testified that he thought "either from immaturity or poor judgment or lack of ability, or a combination of all of those Mr. Daniels [was] at some disadvantage in making decisions, important decisions of any nature, certainly legal ones would be an area that he probably has very limited experience with."

A statement is not inadmissible simply because a defendant suffers from mental impairments. *See Green*, 839 S.W.2d at 940; *see also Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970). The defendant's "mental impairment" must be "so severe that he is incapable of understanding the meaning and effect of his confession." *Green*, 839 S.W.2d at 940.

Although Daniels has an I.Q. score of approximately 69, placing him in the mental retardation range and, according to the testimony of Andrews, he experienced difficulty understanding legal terms, Texas courts have long upheld confessions made by defendants suffering from severe mental impairments. *See Harner v. State*, 997 S.W.2d 695, 700 (Tex. App.—Texarkana 1999, no pet.) **(**defendant had an eighth grade education, attended special education classes, was an MHMR patient, took medication, and was told he could return to MHMR if he signed his confession); *see also Casias*, 452 S.W.2d at 488 (defendant had an I.Q. of 68, was retarded, illiterate, at the mental age of eight to ten, and at the educational level of "approximately second grade"); *Bell v. State*, 582 S.W.2d 800, 809 (Tex. Crim. App. 1979) (defendant was mildly mentally retarded and "lacked the capacity to read and understand certain statements"); *Grayson v. State*, 438 S.W.2d 553, 555-56 (Tex. Crim. App. 1969) (defendant was "not nearly as intelligent as a normal three or four year old and had an IQ of 51").

Therefore, we cannot say that the trial court abused its discretion in determining that Daniels's mental impairments are not of such great severity that he was "incapable of understanding the meaning and effect of his confession." *Green*, 839 S.W.2d at 940. First, the record reflects that Daniels testing results could not be completely analyzed because he was uncooperative. Andrews explained that Daniels was not motivated to perform well on the tests and he could not determine how severe Daniel's limitations were. Second, Andrews testified that at one point during the competency evaluation, Daniels stopped the interview and declined to continue until after he had spoken with his lawyer. Third, Daniels verbally indicated that he understood his rights and placed a check beside each corresponding warning on the *Miranda* form. *See Franks v. State*, 90 S.W.3d 771, 786 (Tex. App.—Fort Worth 2002, no pet.).

In particular, Daniels's request for his lawyer signifies his "ability to think defensively" and understand that his actions have legal implications. *Rivera v. State*, No. 02-05-056-CR, 2006 Tex. App. Lexis 2291 at *10 (Tex. App.—Fort Worth Mar. 23, 2006, pet. ref'd) (not designated for publication). Thus, Daniels's mental impairments do not appear to be so severe as to prevent him from comprehending the consequences of his statements to police. *Green*, 839 S.W.2d at 940.

Although Daniels suffers from diminished mental abilities, the totality of the circumstances does not indicate that his confession was involuntary. Further, Daniels does not argue that he was subject to coercion or fraud. Daniels consented to the questioning, was advised of his statutory rights, and indicated that he understood these rights. *See Franks*, 90 S.W.3d at 786. Accordingly, under the totality of the

circumstances, and viewed in the light most favorable to the trial court's ruling, the court did not abuse its discretion by finding that Daniels's confession was voluntary. *See Montanez*, 195 S.W.3d at 106; *see also Green*, 839 S.W.2d at 940. We overrule Daniels's second issue.

## Conclusion

Having overruled all of Daniels's issues, we affirm the judgment of the trial court.


BILL VANCE
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
Affirmed
Opinion delivered and filed December 3, 2008
Do not publish
[CRPM]