Alan Jannotti v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-240-CR

Â Â Â Â Â ALAN JANNOTTI,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the County Court at Law No. 1
McLennan County, Texas
Trial Court # 992929 CR1
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Appellant Alan Jannotti filed a notice of appeal seeking to complain about the trial courtâs
overruling of his motion to suppress. He subsequently filed a motion to withdraw his notice of
appeal, stating that he is of the opinion that this court does not yet have jurisdiction over the
appeal. In relevant portion, Rule 42.2 of the Texas Rules of Appellate Procedure states:
(a) At any time before the appellate courtâs decision, the appellate court may dismiss
the appeal if the appellant withdraws his or her notice of appeal. The appellant and
his or her attorney must sign the written withdrawal and file it in duplicate with the
appellate clerk, who must immediately send the duplicate copy to the trial court clerk.

Tex. R. App. P. 42.2(a). We have not issued a decision in this appeal. The motion is signed
by both Jannotti and his attorney. See id. A copy has been sent to the trial court clerk. Id.
Â Â Â Â Â Â This appeal is dismissed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM


Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Â Â Â Â Justice Gray
Dismissed
Opinion delivered and filed August 30, 2000
Do not publishÂ Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



;text-decoration:none'> v. State, 667 S.W.2d 130,
134 (Tex. Crim. App. 1984).

Here, the jury charge contained
a voluntariness instruction and Delao both failed to object to the States reintroduction
of the issue and participated in the re-litigation of this issue on
cross-examination of Rozyskie and in closing argument.[3]Â  Rachal, 917 S.W.2d at 809; see Kearney, 181 S.W.3d at 446; see also Licon v. State, 99 S.W.3d 918, 922 (Tex.
App.ÂEl Paso 2003, no pet).Â  Therefore, we will consider the entire record and will not disturb
the courtÂs ruling absent an abuse of discretion.Â  See Rachal, 917 S.W.2d at 809; see
also Kearney, 181 S.W.3d at 446.

Voluntariness

A statement is involuntary if
there is Âofficial, coercive conductÂ such that Âany statement obtained thereby
was unlikely to have been the product of an essentially free and unconstrained
choice by its maker.ÂÂ  Alvarado
v. State, 912
S.W.2d 199, 211 (Tex. Crim. App. 1995).Â  If the defendantÂs evidence raises the voluntariness
issue, the State must prove voluntariness beyond a reasonable doubt.Â  See
 Kearney, 181 S.W.3d at 444.Â  We consider the totality of the
circumstances when determining the voluntariness of a confession.Â  Id.

Delao contests the voluntariness of his
confession on three grounds: (1) he suffers from mental disabilities; (2) the interview was
coercive; and (3) his requests to terminate the interview were ignored.Â  We
will address each ground in considering the totality of the circumstances.

Mental Disabilities

A statement is not inadmissible simply because a
defendant suffers from mental impairments.Â  See Green v. State, 839 S.W.2d 935, 940 (Tex.
App.ÂWaco 1992, pet refÂd); see also Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970).Â  The defendantÂs Âmental impairmentÂ must be Âso
severe that he is incapable of understandingÂ the meaning and effect of his
confession.ÂÂ  Green, 839 S.W.2d at 940.

Delao suffers from moderate mental retardation, a form of
schizophrenia, disruptive behavior disorder and alcohol abuse.Â  He meets with a
psychiatrist, is an MHMR patient, takes medication and has an IQ score of
approximately fifty-five, placing him at the mental age level of ten or eleven.
Â Thus, according to the testimony of Dr. Mark Cunningham, Delao experienced
difficulty understanding his rights, cannot be held to the same standard as an
average person, and involuntarily confessed.

However, Texas courts have long upheld confessions made by defendants suffering
from similar mental impairments.Â  See Harner v. State, 997 S.W.2d 695, 700 (Tex. App.ÂTexarkana 1999,
no pet.) (defendant
had an eighth grade education, attended special education classes, was an MHMR
patient, took medication, and was told he could return to MHMR if he signed his
confession); see also Casias, 452 S.W.2d at 488
(defendant had an I.Q. of 68, was retarded, illiterate, at the mental age of
eight to ten, and at the educational level of Âapproximately secondÂ gradeÂ);
Bell v.
State, 582
S.W.2d 800, 809 (Tex. Crim. App. 1979) (defendant was mildly
mentally retarded and Âlacked the capacity to read and understand certain
statementsÂ); Grayson
v. State, 438
S.W.2d 553, 555-56 (Tex. Crim. App. 1969) (defendant was Ânot nearly
as intelligent as a normal three or four year old,Â had an IQ of 51 and was a
Âlow-grade moronÂ).

Therefore, we cannot say that
DelaoÂs mental impairments are of such great severity that he was Âincapable of
understanding the meaning and effect of his confession.Â Â Green, 839 S.W.2d at 940.Â  First,
the record reflects that Delao understood the statutory warnings.Â  Rozyskie
explained DelaoÂs rights both before and after HarrisonÂs arrival.Â  Thus, Harrison was available to assist Delao in the event he struggled to understand.Â  Delao verbally
indicated that he understood these rights and placed a check beside each
corresponding warning on the Miranda form.Â  See Franks v. State,
90 S.W.3d 771, 786 (Tex. App.ÂFort Worth 2002, no pet.).

Second, Delao responded to RozyskieÂs
questions and appeared to understand the questions.Â  He was not held
incommunicado without the advice of counsel, friends or family, but had access
to Harrison who
was present and available to provide assistance if Delao felt confused or struggled to understand.Â  See State v. Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). Â The record reflects
that Delao promptly answered the questions and his responses appropriately
addressed each question asked.Â  See Guardiola v. State, 20 S.W.3d 216,
224 (Tex. App.ÂHouston [14th Dist.] 2000, pet refÂd).[4]

Third, the following statements
and questions reflect DelaoÂs awareness of the potential consequences of
confessing:

When you leaving here, going Â he got to lock me
Â lock me up. 

Â 

If I talk to you, you going to go home, or go to
jail? 

Â 

I ainÂt going to run off.Â  I want to see my
baby, man.Â  I ainÂt going to run.Â  IÂll want to see my baby. 

Â 

They Â you are trying to mess me up.Â  I go to
jail today, man. 

Â 

I donÂt want to get in trouble for it, man,
because I know I ainÂt mean Â I didnÂt mean Â I shot the wall, man.Â  

Â 

In particular, DelaoÂs last
statement signifies his Âability
to think defensively and to offer a mitigating statement.ÂÂ  Rivera v. State, No. 2-05-056-CR, 2006 Tex. App. Lexis
2291Â at *10 (Tex. App.ÂFort Worth Mar. 23, 2006, pet refÂd) (not designated
for publication).[5]Â 
These comments indicate DelaoÂs awareness that confessing may lead to criminal
prosecution.Â  In fact, Delao acknowledged his understanding that anything he
said could be used against him in court.Â  See Franks, 90 S.W.3d at 786. Â Thus,
DelaoÂs mental impairments do not appear to be so severe as to prevent him from
comprehending the consequences of his confession.Â  Green, 839 S.W.2d at
940.

Coerciveness of the Interview

Standing alone, a detectiveÂs misrepresentations to a Âsuspect during
an interrogationÂ do not render a confession involuntary.Â  Green v. State, 934 S.W.2d 92, 99 (Tex. Crim.
App. 1996).Â  It is Âconstitutionally
permissibleÂ for police to employ certain types of deception Âdesigned to
elicit a confessionÂ as long as the suspectÂs will is not overborne.Â  Id.Â  Factors to consider when
determining whether a defendantÂs will was overborne include: Âlength of detention;
incommunicado or prolonged interrogation; denying access to a family member;
refusing a defendantÂs request to telephone a lawyer or family member; and
physical brutality.Â Â Pace v.
State, 986
S.W.2d 740, 747 (Tex. App.ÂEl Paso 1999, pet. refÂd).

During the interview, DelaoÂs anxiety level was
increased by being confined to a small room with Rozyskie, an authority figure.Â 
Rozyskie represented that a photograph placed Delao inside the bar, the
witnesses at the scene picked Delao from a lineup, DNA and fingerprints were
coming in, and Rozyskie ÂknewÂ Delao committed the crime.Â  Rozyskie claimed to
be DelaoÂs Âbest friend,Â that the conversation would be confidential, and that
he placed his credibility on the line just to speak with Delao.Â  Rozyskie
minimized the crime by claiming that he believes Delao simply made a mistake,
but people in the next room believe that Delao is a Âcold blooded killer.ÂÂ  According
to Dr. Cunningham, these circumstances magnified DelaoÂs disabilities and
caused Delao to provide answers he thought Rozyskie wanted to hear.

First, Âmisrepresentation relating to an accusedÂs connection
to the crime is the least likely to render a confession involuntary.ÂÂ  Green, 934 S.W.2d at 99. Â RozyskieÂs act of Âinflating
evidenceÂ simply led Delao to Âconsider anything beyond his own beliefs
regarding his actual guilt or innocence, his moral sense of right and wrong,
and his judgment regarding the likelihood that the police had garnered enough
valid evidence linking him to the crime.ÂÂ  See id. at 100; Holland
v. McGinnis, 963
F.2d 1044, 1051 (7th Cir. 1992).[6]Â  The misrepresentations Rozyskie made to Delao are
directly related to DelaoÂs connection with the crime and so were insufficient
to coerce an involuntary statement.Â  See Green, 934 S.W.2d at 99.

Second, Âthe fact that a friendly,
supportive, low key, nonconfrontational
style may prove effective in eliciting incriminating statements does not mean that the
style of questioning is improper or that the resulting statements are involuntary.ÂÂ  Lane v. State, 933 S.W.2d 504, 513 (Tex.
Crim. App. 1996).Â  RozyskieÂs attempts to befriend Delao and gain his trust did nothing more than Âfacilitate
communication by being friendly and supportive.ÂÂ  Id.

Third, the interview lacked any element
of coerciveness: (1) the interview lasted little more than one hour; (2) Delao
was not denied access to a family member, but was granted access to his MHMR
counselor; (3) Delao received a drink; and (4) no physical violence occurred
during the interview.Â  See Licon, 99 S.W.3d at 925; see also Pace, 986 S.W.2d at 747.Â 
Consequently, the record lacks evidence that DelaoÂs will was overborne.

Right to Terminate

ÂFailure to cut off questioning
after a suspect invokes his right to remain silent violates his rights and
renders any subsequently obtained statements inadmissible.ÂÂ  Dowthitt v. State, 931 S.W.2d 244, 257 (Tex.
Crim. App. 1996).Â 
However, Âan officer need not stop his questioning unless the suspectÂs
invocation of rights is unambiguous, and the officer is not required to clarify
ambiguous remarks.ÂÂ  Id.

During the interview, Rozyskie explained the
right to terminate the interview as follows: 

Â 

You have the right to terminate this interview
at any time.Â  Do you understand that? Okay.Â  That means you can stop it.Â  If
you go, ÂHey, I donÂt want to answer any more questions, I donÂt want to talk
to you,Â weÂre out of here, you go home.

Â 

Delao responded that he
understood this right and placed a check mark next to the corresponding statement
on the Miranda warning form.Â  See Franks, 90 S.W.3d at 786.Â  Harrison also reminded Delao that he
did not have to answer RozyskieÂs questions.Â  Throughout the remainder of the
interview, Delao periodically made the following statements and/or questions:

Well, can I go home, man?

I want to go home to the house,
man.Â  I go on and do it then.

IÂll come up to talk to you
later because, man, I donÂt have time to think.

Where I can go homeÂ

I gotta go home.

I can go home.

Can I go home now?

Rozyskie continued the
interview after each of these statements.Â  At the end of the interview Delao
clearly stated, ÂI want to go home.ÂÂ  Delao then waited in the hallway until
driven home.

Dr. Cunningham testified that
RozyskieÂs act of continuing the interview caused Delao to believe that he
could not go home even though told
he had the right to terminate the interview.Â  In turn, this conflicting conduct
and the intimidating circumstances of the interview prevented Delao from being
able to simply leave the room as would an average person.

However, Delao indicated that
he understood his right to terminate the interview.Â  See Franks, 90 S.W.3d at 786.Â  Delao
and the State agree that Delao was not under arrest at the time of the
interview.Â  See Kiser v. State, 788 S.W.2d 909, 912 (Tex. App.ÂDallas
1990, pet refÂd); see also Ramirez v. State, 116 S.W.3d 55, 59 (Tex. App.ÂHouston
[14th Dist.] 1998, pet refÂd).Â  In fact, Delao voluntarily accompanied the detectives
to the police station.Â  See Ramirez, 116 S.W.3d at 59. Â Rozyskie repeatedly reminded Delao that he was not
under arrest.Â  See
id; see
also Kiser, 788 S.W.2d at 912.Â  In only one instance did Delao stop the interview to
speak with Harrison about whether he should continue answering questions.Â  Harrison asked Delao whether he wanted a lawyer and whether he wanted to continue the
interview.Â  Delao chose to continue answering questions because he wanted go
home.

Although Delao does not
challenge the courtÂs finding that he was not under arrest, he has failed to
identify any statement unambiguously attempting to terminate the interview and
invoke his right to remain silent.Â  See Dowthitt, 931 S.W.2d at 257.Â  His statements more accurately
reflect a desire to have time to formulate answers or an inquiry as to whether
he would be allowed to go home if he confessed rather than a request to
terminate the interview.Â  At most, DelaoÂs statements are ambiguous as to his
desire to terminate the interview.

Totality of the Circumstances

Although Delao suffers from
diminished mental abilities, the totality of the circumstances does not
indicate that his confession was involuntary. Â Rather, Delao consented to the
questioning, was advised of his statutory rights and indicated that he
understood these rights.Â  See Franks, 90 S.W.3d at 786.Â  He was able to provide answers to the
questions posed, formulate a defensive response, and express his awareness that
confessing could lead to punishment.Â  See Guardiola, 20 S.W.3d at 224;
see also Rivera, 2006 Tex. App. Lexis 2291Â at *10. Â Neither was Delao subjected to
a coercive environment.Â  It was proper for Rozyskie to seek a confession by
appealing to DelaoÂs trust and making misrepresentations related to DelaoÂs
connection with the crime. Â See Holland, 963 F.2d at 1051; see also Green,
934 S.W.2d at 99; Lane, 933 S.W.2d at 513.Â  The interview was short in duration, DelaoÂs MHMR
counselor was present, Delao received a drink, and no physical violence took
place.Â  See Licon, 99 S.W.3d at 925; see also
Pace, 986 S.W.2d at 747.Â 
Thus, the record does not indicate that DelaoÂs will was overborne or that his
confession was not freely and voluntarily made.Â  See id.

Furthermore, although Delao was
not under arrest, he did not
unambiguously assert his right to terminate the interview.Â  The only time Delao
clearly questioned whether to continue the interview, he chose to proceed.Â  His
statements about going home were ambiguous as to whether he desired to
terminate the interview or whether he simply sought the chance to incur
additional time to formulate answers.Â  In either event, Rozyskie was not
required to clarify DelaoÂs statements. Â See Dowthitt, 931 S.W.2d at
257; see also Kiser, 788 S.W.2d at 912. 

Accordingly, under the totality
of the circumstances, and viewed in the light most favorable to the trial
courtÂs ruling, the court did not abuse its discretion by finding that DelaoÂs
confession was voluntary.Â  See Montanez, 195 S.W.3d at 106; see also Green, 839
S.W.2d at 940; Pace, 986 S.W.2d at 747; Kearney, 181 S.W.3d at
446.Â  DelaoÂs
first issue is overruled.

ISSUE TWO

Â Â Â Â Â Â Â Â Â  In his second issue, Delao contends
the court erroneously restricted his voir dire examination as follows:

DEFENSE COUNSEL:Â  All right.Â  One last question,
I know the day is getting long.Â  Mrs. Polk, is it better -- is it preferable to
convict an innocent person or to let a guilty person go free?

Â 

THE STATE:Â  Your honor, at this time we would
object.Â  ItÂs an improper --

Â 

THE COURT:Â  Sustained.

Â 

DEFENSE COUNSEL:Â  In a jury trial obviously the
jurors are the finders of what happened.Â  And they are the boss.Â  So whichever
twelve of you sit over in the box over there, you are going to be the boss.Â 
All we can ask of you is to fairly hear what we are trying to tell youÂ

Â 

We review a courtÂs limitation of voir dire for
abuse of discretion.Â  See Sells v. State, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003); see also Rogers v. State, 44 S.W.3d 244, 248 (Tex. App.ÂWaco 2001, no pet).Â  A court abuses its
discretion by disallowing the answer to a proper question.Â  See Sells, 121 S.W.3d at 755-756; see
also Allridge
v. State, 762
S.W.2d 146, 163 (Tex. Crim. App. 1988).Â  A proper question seeks a ÂjurorÂs
views on an issue applicable to the case,Â while an improper question commits
the Âjuror to a particular verdict based on particular facts.ÂÂ  Sells, 121 S.W.3d at 756.

Where a court places no absolute limitation on the Âunderlying
substanceÂ of the defendantÂs question, Âcounsel must rephrase the improperly phrased question
or waive the voir dire restriction.Â Â Bolden
v. State, 73
S.W.3d 428, 431 (Tex. App.ÂHouston [1st Dist.] 2002, pet refÂd); see Wright
v. State, 28 S.W.3d 526, 534 (Tex. Crim. App. 2000).Â  It is insufficient to merely show that the court
Âgenerally disapproved of an area of inquiry from which proper questions could
have been formulated,Â as the court Âmight have allowed the proper question had
it been submitted for the courtÂs consideration.ÂÂ  Sells,
121 S.W.3d at 756.

Once the court sustained the StateÂs objection
to DelaoÂs question, Delao abandoned this particular line of questioning.Â  Although the court disapproved of DelaoÂs Âarea
of inquiry,Â the court might have allowed Delao to rephrase his question or ask
other questions.Â  See Sells, 121 S.W.3d at 756.Â  Delao did not dispute the
courtÂs ruling, seek to rephrase the question or request to pose alternative
questions.Â  See Bolden,
73 S.W.3d at 431; see also Wright, 28 S.W.3d at 536.Â  Thus, Delao failed to preserve his
complaint for appeal.Â  See Sells, 121 S.W.3d at 756; see also Bolden, 73 S.W.3d at 431; Wright,
28 S.W.3d at 536.Â  We
overrule his second issue.

ISSUE THREE

Â Â Â Â Â Â Â Â Â  Delao argues, in his third issue, that
the courtÂs admission of testimony regarding how DelaoÂs photograph came to be
included in the lineup resulted in a violation of his Sixth Amendment right to confrontation.

Â Â Â Â Â Â Â Â Â  Whether a courtÂs admission of
evidence violates the Confrontation Clause is reviewed de novo.Â  See
McClenton v. State, 167 S.W.3d 86, 93 (Tex. App.ÂWaco 2005, no pet.).Â  The
Confrontation Clause guarantees a defendantÂs right to Âbe confronted with the
witnesses against him.ÂÂ  U.S. Const.
amend. VI.Â  ÂTestimonial statementsÂ made by Âwitnesses absent from trialÂ are
admissible Âonly when the declarant is unavailable and only where the defendant
has had a prior opportunity to cross-examine.Â Â Kearney, 181 S.W.3d at
442; see Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354,
1368-69, 158 L. Ed. 177 (2004).

Testimonial statements come in the form of (1)
ÂÂex parte in-court testimony or its functional equivalent,Â such as
affidavits, custodial examinations, prior testimony not subject to
cross-examination or Âsimilar pretrial statements that declarants would
reasonably expect to be used prosecutorially;ÂÂ (2) ÂÂextrajudicial statementsÂ
of the same nature Âcontained in formalized testimonial materials;ÂÂ (3) ÂÂstatements
that were made under circumstances which would lead an objective witness
reasonably to believe that the statement would be available for use at a later
trial;ÂÂ and (4) Âprior testimony at a preliminary hearing, before grand jury,
or at a former trial; and police interrogations.Â Â Kearney, 181 S.W.3d
at 442; Crawford, 541 U.S. at 51-52, 68, 124 S. Ct. at 1364, 1374.

Delao relies on Walker v. State for the
proposition that testimony regarding a third-party tip is inadmissible.Â  In Walker, Detective
Michael Parinello was informed that
Dedra Dangerfield was arrested on an unrelated matter and possessed items stolen in a robbery he
was investigating.Â  See Walker v. State, 180 S.W.3d 829, 831 (Tex. App.ÂHouston
[14thÂ Dist.] 2005, no pet.).Â  Parinello met with Dangerfield who told him the
nicknames of two potential suspects, including Walker.Â  See id.Â  Parinello
compiled a photographic lineup.Â  See id.Â  At trial, Parinello testified
that he showed the lineup to Dangerfield who identified Walker.Â  See id.Â  On
appeal, Walker challenged the admission of this testimony.Â  See id at
833.Â  The Houston Court found that:

Parinello approached Dangerfield while she was
in police custody to question her about an ongoingÂ criminal investigation
and asked her to identify suspects in that investigation. These facts
demonstrate that the setting was sufficiently formal and structured to qualify
as a police interrogation. Additionally, under these circumstances, Dangerfield
reasonably could have believed that her identifications would be used in the
subsequent trials of Ramos and appellant.

Â 

Id. at 834.Â  Accordingly,
Âadmission of DangerfieldÂs incriminating out-of-court testimonial statements
violated appellantÂs Sixth
Amendment rights.ÂÂ  Id.

Walker is distinguishable from the
present case. Â Here, the police initially had no suspects. Â At trial, Rozyskie explained
that he received information implicating Delao as a suspect.Â  After receiving
this information, he compiled a lineup that included a photo of Delao.Â  Rozyskie
then showed the lineup to Blankenship, Amos, and Powell.Â  Blankenship identified
Delao from this lineup and subsequently testified at trial.

However, the record does not reveal
from whom Rozyskie received the incriminating information or the method in
which the information was received.Â  Neither does the record reflect that
Rozyskie approached and/or interviewed this person or that the person
identified Delao from a lineup.Â  Unlike Walker, there is simply no
evidence of a custodial setting or a formal police interrogation sufficient to
render this evidence testimonial. Â See id.

Rather, an officer may Âtestify about
anonymous tips received for the purpose of showing why the investigation
focused on a particular defendant.ÂÂ  Davis v. State, 169 S.W.3d 673, 676 (Tex. App.ÂFort Worth 2005, no
pet.).Â  An officer
may also testify to Âacting in response to Âinformation received.ÂÂ Â Kimball v. State, 24 S.W.3d 555, 564 (Tex. App.ÂWaco 2000, no pet.). Â The statement of which Delao complains was not offered to prove the
truth of the matter asserted, but to show how Delao became a suspect and why
Rozyskie included DelaoÂs photograph in the lineup.Â  See id; see also
Davis, 169 S.W.3d at 676; McCreary
v. State, 194 S.W.3d 517, 521-22 (Tex. App.ÂHouston [1st Dist.] 2006, no
pet.).Â  Because the testimony was not hearsay, DelaoÂs constitutional right to
confrontation was not violated, and the court did not abuse its discretion by admitting this
testimony.Â  See Kimball,
24 S.W.3d at 564; see also Davis,
169 S.W.3d at 676; McCreary, 194 S.W.3d at 521-22.Â  We overrule DelaoÂs third
issue.




Having overruled DelaoÂs three
issues, we affirm the judgment.

Â 








FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs without a separate opinion)

Affirmed

Opinion delivered and
filed November 15, 2006 

Do not publish

[CRPM]









[1] Â Â Â Â Â Â Â Â Â  Findings regarding
the voluntariness of a confession may be dictated into the record and are in
compliance with article 38.22 of the Texas Code of Criminal Procedure.Â  See Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003); see
also Lee v. State, 964 S.W.2d 3, 11-12 (Tex App.ÂHouston [1st Dist.]
1997, pet ref'd); Andrade v. State, 6 S.W.3d 584, 592 (Tex. App.ÂHouston [14th Dist.] 1999, pet ref'd).

Â 





[2] Â Â Â Â Â Â Â Â Â  ÂIt would be unreasonable to ignore trial evidence
in our review of the courtÂs suppression decision only to be confronted by the
evidence in our consideration of whether the error was harmless.ÂÂ  Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); see
Tex. R.
App. P. 44.

Â 





[3] Â Â Â Â Â Â Â Â Â  The instruction states, ÂA statement
of an accused may be used in evidence against him if it appears that the same
was freely and voluntarily made without compulsion or persuasion.Â  Now,
therefore, if you find and believe from the evidence beyond a reasonable doubt
that the statement made by the defendant, Isaiah Paul Delao, to Detective John
Rozyskie was not voluntarily made, then you shall not consider such statement
for any purpose whatsoever.Â





[4] Â Â Â Â Â Â Â Â Â  The Houston Court upheld the trial
courtÂs findings that Guardiola Âcould leave at any time, understood the
warnings given toÂ him, and readily responded to questions asked to him.ÂÂ  Guardiola v. State, 20 S.W.3d 216, 224 (Tex. App.ÂHouston [14th Dist.] 2000, pet refÂd).

Â 





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  After signing a written
confession, ÂRivera then added a mitigating statement in his own handwriting
explaining that he did not mean to hurt Palmer and that he was on drugs at the
time of the offense.ÂÂ  Rivera v.
State, No. 2-05-056-CR, 2006 Tex. App. LEXIS 2291Â at *10 (Tex. App.ÂFort Worth Mar.
23, 2006, pet. refÂd) (not designated for publication).





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  ÂExtrinsic considerations,Â
however, are likely to cause involuntary confessions because they skew the
defendantÂs Ârational choice,Â damage his Âfree choice,Â and Âcast doubt upon
the reliability of the resulting confession.ÂÂ  Holland
v. McGinnis, 963
F.2d 1044, 1051-52 (7th Cir. 1992).