Opinion issued May 6, 2010.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-08-00900-CR

———————————

Alvie Lee Butler, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On Appeal from the 208th District Court 

Harris County, Texas



Trial Court Case No. 1074265

 



 

 

MEMORANDUM OPINION

          Appellant, Alvie Lee Butler, was
charged with the felony offense of capital murder.  Appellant pleaded not guilty.  A jury found appellant guilty of the offense
and the trial court sentenced him to confinement for life.  In five issues, appellant contends (1) the
trial court erred by failing to file findings of fact and conclusions of law
regarding the voluntariness of appellant’s custodial statement, (2) appellant’s
custodial statement was not voluntary and should have been suppressed, (3) the
jury instructions authorized conviction on a theory not contained within the
indictment, (4) the automatic imposition of a life sentence pursuant to Texas
Penal Code section 12.31(b) violates the United States Constitutional
protection against cruel and unusual punishment, and (5) the automatic
imposition of a life sentence pursuant to Texas Penal Code section 12.31(b)
violates the Texas Constitutional protection against cruel and unusual
punishment.  We affirm.

Background

Complainant, Jose Morales Lopez, was shot and killed on an
early June 2006 morning.  Police found
Lopez in the backseat of his car with a bullet wound to his head.  Lopez was shot when appellant attempted to
rob him with co-assailants.  The other assailants
associated with appellant and Lopez’s death were Timothy Randle, Keithron
Fields, and Dexter Johnson.

Randle, testifying as an accomplice witness, testified that
he, appellant, Fields, and Johnson decided to rob someone.  The assailants went searching for a victim
traveling in a group divided between two cars with Randle driving a stolen Ford
and appellant, Fields, and Johnson driving a stolen Toyota.  The assailants were dressed entirely in black
and wore black bandanas.  

Once the assailants saw Lopez driving alone in his car, the
assailants targeted Lopez as someone to rob. 
When the assailants caught up to Lopez with their cars, Johnson drove
the Toyota in front of Lopez’s vehicle and slammed on the brakes.   Appellant and Fields leapt out of the Toyota
and approached Lopez’s vehicle, capturing him unaware.  Appellant and Fields forced Lopez into the
rear seat and held him there.  Fields
took control of Lopez’s car and drove the vehicle to a deserted dead-end
street, while Johnson and Randle followed in the stolen Toyota and Ford.  Once all the assailants parked, they executed
Lopez.  

Later that morning, Houston Police crime scene investigator
Jay Hammerle was called to the scene of the crime.  Investigator Hammerle testified that the assailant
had left Lopez in the backseat of the vehicle where they executed him. From cartridges
left in Lopez’s car, officers determined that a .22 millimeter automatic
handgun had been used to execute Lopez at point-blank range.

Houston Police Officer Todd Miller later obtained arrest
warrants for appellant, Randle, and Fields. 
Three days after Lopez’s murder, Officer Miller arrested appellant and
Randle while they were putting luggage into a vehicle in an apparent attempt to
flee.  Officer Miller testified that
after arresting appellant he read appellant the standard Miranda warning and asked appellant if he understood his
rights.  Appellant answered affirmatively
and stated “I’ll tell you everything.” 
Appellant cooperated with the investigation, even assisting the police
in an attempt to apprehend Fields.  

Eventually, appellant gave a recorded statement.  In the statement, appellant claimed that he,
Randle, Fields and Johnson ambushed Lopez in his car and tried to get him to
give them money.  He stated they drove
Lopez to an isolated spot and that Fields shot Lopez on Johnson’s orders when
Lopez did not produce any money.  Appellant
agreed that he was in the car with Lopez, but denied having a gun or being in
the back seat.  Miller stated that
throughout the course of the investigation, appellant was cooperative, calm,
and “matter of fact.”  Miller stated that
he did not detect any type of mental impairment, but to the contrary, found
appellant to be “very oriented as to person, place, and thing.”  Additionally, Miller testified that appellant
was not promised anything in exchange for his statement; was not handcuffed
during the interview; and was not intimidated, coerced, or abused by any
officer.  

At trial, multiple witnesses testified about the physical
evidence obtained by the police and the crime scene.  Officer Miller testified regarding his
interview with appellant.  Randle gave
accomplice testimony.  Appellant did not
call any witnesses.

 

 

Findings of Fact and Conclusions of
Law

          In appellant’s first issue, he
contends the trial court erred by failing to make written findings of fact and
conclusions of law regarding the voluntariness of his statement.  When a question is raised about the
voluntariness of a defendant’s statement, the trial court must make an
independent finding, in the absence of the jury, whether the defendant gave the
statement voluntarily.  Tex. Code Crim. P. Ann. art. 38.22, § 6
(Vernon 2005).  If the trial court finds
the statement was voluntary and is admissible, the court must “enter an order
stating its conclusion as to whether or not the statement was voluntarily made,
along with specific findings of facts upon which the conclusion was based . . .
.” Id.  

In July 2009, we granted the State’s motion to abate and
remand the case to give the trial court an opportunity to file findings and
conclusions concerning appellant’s statement. 
Pursuant to our remand order, the trial court filed written findings of
fact and conclusions of law regarding the voluntariness of appellant’s statement.  Because the trial court entered written
findings of fact and conclusions of law, appellant’s first issue is rendered
moot.  See Rocha v. State, 16 S.W.3d 1, 10 (Tex. Crim. App. 2000) (holding
that trial court’s findings of fact and conclusions of law rendered moot
appellant’s complaint that no findings were made).

We overrule appellant’s first issue.

Motion to Suppress

In his second issue, appellant contends the trial court erred
by denying the motion to suppress his custodial statement.  Appellant contends the statement was not made
freely and voluntarily because his mental ability to understand the
consequences of his statement is limited.

A defendant’s statement may be used in evidence against him
if the defendant made it freely and voluntarily and without compulsion or
persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005).  However, article 38.22, section 2(b)
specifies that no statement made by an accused as a result of custodial
interrogation may be admissible unless the accused “prior to and during the
making of the statement, knowingly, intelligently, and voluntarily waived” the
warnings prescribed by section 2(a).  Tex. Code Crim. Proc. Ann. art.  38.22 § 2(a), (b) (Vernon 2005).  “The determination of whether a confession is
voluntary is based on an examination of the totality of circumstances
surrounding its acquisition.”  Wyatt v. State, 23 S.W.3d 18, 23 (Tex.
Crim. App. 2000) (quoting Penry v. State,
903 S.W.2d 715, 744 (Tex. Crim. App. 1995).

A statement is involuntary “only if there was official,
coercive conduct of such a nature that any statement obtained thereby was
unlikely to have been the product of an essentially free and unconstrained
choice by its maker.”  See State v. Terrazas, 4 S.W.3d 720, 723
(Tex. Crim. App. 1999) (quoting Alvarado,
912 S.W.2d 199, 211 (Tex. Crim. App. 1995)). 
“Absent coercive police conduct causually related to the confession,
there is simply no basis for concluding that any state actor has deprived a
criminal defendant of due process of law.” 
Alvarado, 912 S.W.2d at 211.

Once the defendant moves to suppress a statement on the
ground of “involuntariness,” the due process guarantee requires the trial court
to hold a hearing on the admissibility of the statement outside the presence of
the jury.  Id.  At the hearing, the
trial court is the sole judge of the weight and credibility of the evidence.  Id.  Thus, the trial court is free to believe any
or all of a witness’s testimony. State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  In reviewing a trial court’s ruling on a
motion to suppress evidence, an appellate court should give great weight to the
inferences drawn by the trial court and law enforcement officers and the trial
court’s finding may not be disturbed on appeal absent clear abuse of
discretion.  Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Alvarado, 912 S.W.2d 199, 211 (Tex.
Crim. App. 1995); Davis v. State, 989
S.W.2d 859, 862 (Tex. App.—Austin 1999, pet. ref’d).  

          The
trial court held a suppression hearing. 
The court denied appellant’s motion to suppress his custodial
statement.  In accordance with section 6
of article 38.22 of the Texas Code of Criminal Procedure, the trial court
entered findings of fact and conclusions of law regarding the voluntariness of
appellant’s recorded custodial statement. 
See Tex. Code Crim. Proc. Ann. art. 38.22 § 6.  The trial court found that once he arrested
appellant, “Officer Miller informed [appellant] of his rights provided by Miranda v. Arizona and article 38.22 of
the Texas Code of Criminal Procedure.”  Once
admonished, appellant “indicated to the officer that he understood his rights
and he voluntarily waived them. . . . [and] then freely and voluntarily
conversed with the police.”  The court
further noted that appellant later left the police station and helped the
police search for another suspect.  The
court noted that when appellant returned to the police station, “Officer Miller
provided [appellant] with food and beverage and allowed him to use the restroom
as needed. . . . [and he] reminded [appellant] of the warning
previously administered and the rights previously waived.”  The court found that appellant again
“indicated he understood his rights and again waived them.”  The court found appellant “then began to
converse about several capital murders and robberies in which he and his
co-actors had been involved and gave a voluntary, tape-recorded statement.”

The court found that “[a]t no time during the course of the
interview, the search for his co-actor, or the defendant’s recorded statement
did Officer Miller detect any mental impairment.”   The
court stated, “To the contrary, Officer Miller found [appellant] to be ‘very
oriented as to person, place, and thing.’” 
The court further found that appellant “was not promised anything in
exchange for his statement,” he was “not handcuffed during the interview,” and
“the officers never used any intimidation, coercion, or force against the
defendant.”  Finally, the court found
appellant “voluntarily spoke to the officers during the recorded interview and
he admitted to his participation in the murder of [Lopez] and to his
participation in several other capital murders and robberies.”

Finding that the testimony of Officer Miller was credible,
the trial court ultimately concluded that appellant had “knowingly,
intelligently, and voluntarily waived his rights and voluntarily spoke to the
officers prior to and during the recorded interview.”  The court also concluded “the defendant did
not invoke his right to counsel or his right to remain silent” and that
appellant “voluntarily confessed to his involvement in the shooting of
[complainant].” 

The record supports the trial court’s findings and
conclusions.  It shows Houston police
officers lawfully placed appellant in custody and transported him to the police
station pursuant to an arrest warrant.  The
record shows that Officer Miller advised appellant of his rights, and that appellant
waived those rights.  Appellant later
left the police station to help the police locate a suspect.  When he and the police returned to the police
station, Officer Miller asked appellant if he remembered the rights Officer
Miller had admonished him of earlier.  Appellant
replied affirmatively.  Officer Miller
then asked him if he wanted to give up those same rights and continue
talking.  Appellant indicated that he
did.  The record shows appellant then
conversed about several capital murders and robberies that he was involved in,
and gave a voluntary tape-recorded statement regarding multiple murders.  Miller testified that appellant was not
promised anything in exchange for his statement, he was not handcuffed during
the interview, was provided food and drink, was allowed to use the restroom,
and was not under intimidation or coercion from the police. 

Officer Miller also testified that during the interview,
appellant was “calm, cooperative” and “matter-of-fact.”  Appellant “always appeared to understand, he
gave an appropriate response to every question that [Miller] asked and was
never hesitant and never invoked his right to remain silent.”  When asked if he ever became aware of any
mental impairment, Officer Miller responded that he did not “become aware that [appellant]
had any kind of mental impairment in talking with him.”  Appellant did discuss a “cranial operation,”
but when Officer Miller asked him if there was anything he could not do besides
drive, appellant responded that he could do everything else.  Overall, appellant “was very oriented as to
person, place and thing.”  He answered
everything that Officer Miller asked him and he seemed “as intelligent as many
of the other people that I talked to on a daily basis and some of the people I
worked with.”  We conclude the evidence
adduced at the suppression hearing supports the trial court’s findings.

Appellant asserts that because he is “intellectually weak,”
he could not have voluntarily given his statement.  A statement is not inadmissible simply
because a defendant suffers from mental impairments.  See
Green v. State, 839 S.W.2d 935, 940 (Tex. App.—Waco 1992, pet ref’d); see also Casias v. State, 452 S.W.2d
483, 488 (Tex. Crim. App. 1970).  Evidence
of diminished mental capacity is merely a factor to be considered under the
“totality of the circumstances” standard for determining whether a confession
is admissible.  See Bizzarri v. State, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973).
The question is whether appellant’s mental impairment was so severe that he was
incapable of understanding the meaning and effect of his confession.  See
Green, 839 S.W.2d at 940.

At the pretrial hearing, appellant admitted school and
medical records.  The records show he did
poorly in school, was retained for an additional year in first grade, had an
I.Q. of 75  at age 10, and did poorly in high
school.  “Texas courts have long upheld
confessions made by defendants suffering from more severe mental impairments
than that attributed to appellant.”  See Harner v. State, 997 S.W.2d 695, 700
(Tex. App.—Texarkana 1999, no pet.) (involving defendant who had eighth-grade
education, attended special education classes, was mental health patient, took
medication, and was told he could return to state mental health agency if he
signed his confession); see also Bell v.
State, 582 S.W.2d 800, 808–09 (Tex. Crim. App. 1979) (upholding
voluntariness determination in case in which defendant was mildly mentally disabled
and appellant contended he “lacked the capacity to read and understand certain
statements”); Casias, 452 S.W.2d at
488 (holding statement to be voluntary even though defendant had I.Q. of 68,
was “retarded,” illiterate, at the mental age of eight to ten, and was at educational
level of “approximately second grade”).

          Additionally, appellant gave “an
appropriate response to every question” asked by Miller and appeared to
understand what was being asked.  The
record also shows appellant was able to give the details about multiple crimes
he had committed and also tried to help the police apprehend another suspect by
pointing out locations to the police.  When
asked if he understood his rights, appellant stated that he did and stated “I’ll
tell you everything.”  When discussing
the crimes, appellant “denied involvement himself, but did tell [Officer
Miller] who it was that was involved and the general location where he believed
the bodies [of other missing persons] to be.” 
Such remarks indicate appellant had the ability to think defensively and
to offer a mitigating statement.  See Delao v. State, No. 10-05-00323-CR,
2006 WL 3317718, at *3 (Tex. App.—Waco Nov. 15, 2006) (mem. op., not designated
for publication), aff’d on other grounds,
Delao v. State, 235 S.W.3d 235, (Tex.
Crim. App. 2007).  These comments, and
others made by appellant during the interview, indicate appellant’s awareness
that confessing may lead to criminal prosecution.  See id.
 The record, therefore, does not show
that appellant’s mental impairments are so severe as to prevent him from
comprehending the consequences of his confession.  See
Green, 839 S.W.2d at 940.

Because the trial court’s findings are supported by the
evidence, and any mental deficiency of appellant is not a factor that requires
disregarding appellant’s custodial statement, we hold the trial court properly
denied appellant’s motion to suppress.  See Franks, 90 S.W.3d at 786 (holding
statement properly admitted by trial court because evidence failed to show
Franks was coerced or intimidated into giving his statement, and failed to show
he did not understand his rights or consequences of abandoning them).

We overrule appellant’s second issue.

Jury Charge

In his third issue, appellant contends the trial court’s jury
charge was erroneous because it authorized a conviction on a different theory than
alleged in the indictment.  He asserts
the court’s inclusion of the law of parties lessened the State’s burden of
proof for capital murder.

It is well-settled that a jury may be charged on the law of
parties even though no such allegation is contained in the indictment.  Vodochodsky
v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005) ( law of parties need
not be pled in indictment); Marable v.
State, 85 S.W.3d 287 (Tex. Crim. App. 2002) (same).  “This rule applies not only to the law of
parties found in [s]ection 7.02(a)(2) [of the Texas Penal Code] but also the
law of parties found in Section 7.02(b).” 
Montoya, 810 S.W.2d at 165.

Appellant was charged under the law of parties found in
section 7.02(b), which provides,

If, in the attempt to carry out a conspiracy to commit
one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.

 

Tex. Penal Code Ann. § 7.02(b) (Vernon 2003).   Appellant contends he could not be guilty in
this case, even as a party, unless he specifically intended for Lopez’s death
to occur as a result of his conduct.  However,
“[n]otwithstanding the requirement that an actor charged with capital murder
must have specifically intended to cause the death of another, [P]enal [C]ode
section 7.02(b) explains that a party may still be criminally responsible for
the acts of another even though the party did not intend for the act to occur
as a result of his conduct.”  Wood v. State, 4 S.W.3d 85, 89 (Tex.
App.—Fort Worth 1999, pet. ref’d) (citing Tex.
Penal Code Ann. § 7.02(b)) (emphasis omitted); see also Cienfuegos v. State,
113 S.W.3d 481, 493–94 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  As a result of section 7.02(b), the Court of
Criminal Appeals and multiple appellate courts have upheld the application of
the law of parties in capital murder cases. 
See Montoya, 810 S.W.2d at 165
(noting, “our examination of case law shows that the theory of criminal
responsibility set forth in section 7.02(b) has often been applied in capital
murder cases”); see also, e.g., Johnson v. State, 853 S.W.2d 527, 536 (Tex. Crim. App. 1992); Fuller v. State, 827 S.W.2d 919, 932–33
(Tex. Crim. App. 1992).   Although the indictment
did not contain an allegation under section 7.02(b), the trial court properly
included that instruction based on the evidence admitted at trial.  See Vodochodsky,
158 S.W.3d at 509; Montoya, 810
S.W.2d at 165; Wood, 4 S.W.3d at 89
(holding court’s jury charge not erroneous in capital murder case where charge
was pursuant to section 7.02(b) even though indictment did not allege
conspiracy). 

We overrule appellant’s third issue.

Cruel and Unusual Punishment

In his fourth and fifth issues, appellant contends section
12.31 of the Texas Penal Code violates the prohibition of cruel and unusual
punishment guaranteed by the Eighth Amendment of the United States Constitution
and article I, section 13, of the Texas Constitution.  See U.S. Const. amend. VIII; Tex. Const. art. I, § 13.  Section 12.31(b) of the Texas Penal code
provides that in a capital felony trial in which the State does not seek the
death penalty, prospective jurors shall be informed that the State is not
seeking the death penalty and that a sentence of life imprisonment without
parole is mandatory on conviction of the capital felony.  Tex.
Penal Code Ann. § 12.31(b) (Vernon Supp. 2009).

We hold appellant waived this issue on appeal because he
failed to assert this challenge to the trial court.  See Curry v. State, 910 S.W.2d
490, 497 (Tex. (Tex. Crim. App. App. 1995) (failure to make specific objection
at trial waives Eighth Amendment claim of cruel and unusual punishment); Solis
v. State, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d)
(cruel and unusual punishment challenge may be waived by failing to object at
trial).  

Moreover, even if appellant had not waived this issue, a
mandatory sentence of life imprisonment without parole is not cruel and unusual
punishment proscribed by the Eighth Amendment of the United State
Constitution.  See Harmelin v. Mich., 501 U.S. 957, 995, 111 S. Ct. 2680, 2701
(1991).  Similarly, it does not violate
the analogous prohibition of article I, section 13 of the Texas
Constitution.  Cienfuegos, 113 S.W.3d at 496.

We overrule appellant’s fourth and fifth issues.




 

Conclusion

          We affirm
the judgment of the trial court.

 

                                                                   

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Chief Justice Radack, and Justices
Alcala and Higley.

Do not publish. 
Tex. R. App. P. 47.2(b).